Bert A. **ROBINSON**, Mary K. Luman, Toyia Urbaniak, Kirk T. Garner, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

**TEXAS AUTOMOBILE DEALERS ASSOCIATION, et al.,** Defendants.

No. 5:97–CV–273.

United States District Court, E.D. Texas, Texarkana Division.

March 28, 2003.

Mike C. Miller, Marshall, TX, J. Patrick Hennessy of Peters, Ward, Bright & Hennessy, Shreveport, LA, Ann C. Yahner of Cohen, Milstein, Hausfeld & Toll, Washington, DC, Robert L. Templeton, Joe W. Hayes, John Smithee of Templeton, Smithee, Hayes, Fields & Young, Amarillo, TX, Damon Young, Lance Lee, of Young, Pickett & Lee, Texarkana, TX, Douglas Bryan Hughes, Mineola, TX, for Plaintiffs.

Robert T. Mowrey, of Locke, Liddell & Sapp, Dallas, TX, Nicholas H. Patton of Patton & Tidwell, Texarkana, TX, William Ikard and William Wayne Kilgarlin of Popp & Ikard, Austin, TX, Harriet Ellan Miers, Dallas, TX, for Defendants.

### MEMORANDUM OPINION AND ORDER GRANTING IN PART PLAINTIFFS' MOTION TO COMPEL

SCHELL, District Judge.

Before the court are the following written submissions:

a) "Plaintiffs' Motion to Compel and Supporting Brief" (Dkt.# 337), filed November 24, 1999;

b) "Defendants' Response to Plaintiffs' Motion to Compel and Brief in Support" (Dkt.# 345), filed December 14, 1999;

c) "Plaintiffs' Reply in Support of Plaintiffs' Motion to Compel" (Dkt.# 356), filed February 2, 2000;

d) "Defendants' Surreply in Further Response to Plaintiffs' Motion to Compel and Brief in Support" (Dkt.# 354), filed February 2, 2000;

e) "Plaintiffs' Brief and Submission of Testimony Pursuant to Court Order" (Dkt.# 396), filed June 5, 2000;

f) "Defendants' Response to Plaintiffs' Submission of Testimony Pursuant to Court Order" (Dkt.# 399), filed June 16, 2000;

g) "Plaintiffs' Supplemental Motion to Compel Production" (Dkt.# 395), filed June 5, 2000;

h) "Defendants' Response to Plaintiffs' Supplemental Motion to Compel Production" (Dkt.# 398), filed June 16, 2000; and

i) "Agreed Stipulation Regarding Privileged Documents" (Dkt.# 404), filed July 17, 2000.

After in camera review of the documents and consideration of the written submissions, privilege log, affidavits, and the applicable law, the court is of the opinion that the motion to compel should be granted in part and denied in part.

## I. INTRODUCTION

This is a proposed class action antitrust case. Plaintiffs allege that the Texas Automobile Dealers Association ("TADA") and its member dealers conspired to fix prices in violation of Section 1 of the Sherman Act, 15 U.S.C. § 1, by agreeing to add an itemized vehicle inventory tax charge to each of their customers' invoices. Plaintiffs filed a motion to compel requesting production of all documents shown on Defendants' privilege log, with certain specified exceptions. Subsequently, in a stipulation filed July 17, 2000, Plaintiffs withdrew their requests as to all documents except those identified in their reply brief. Plaintiffs also filed a supplemental motion to compel requesting certain long distance telephone records.

## II. LEGAL STANDARDS

### A. ATTORNEY-CLIENT PRIVILEGE

■ The federal common law of attorney-client privilege applies to federal court cases where a federal question is being litigated. *See United States ex rel. Gameel Ghaprial, M.D. v. Quorum Health Resources, Inc.*, No. Civ. A. 97–1051, 1999 WL 7900, at *1 (E.D.La. Jan.6, 1999); *Smith v. Smith*, 154 F.R.D. 661, 671 (N.D.Tex.1994). The privilege prevents disclosure of communications between an attorney and client that were made while seeking or rendering legal services. The purpose of the privilege is to "encourage full and frank communication between attorneys and their clients and there-

by promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981).

■ The elements necessary to establish that material is protected by the federal attorney-client privilege are:

(1) the asserted holder of the privilege is or sought to become a client;

(2) the person to whom the communication was made is

(a) a member of a bar of a court, or his subordinate, and

(b) in connection with this communication is acting as a lawyer;

(3) the communication relates to a fact of which the attorney was informed

(a) by his client

(b) without the presence of strangers

(c) for the purpose of securing primarily either

(i) an opinion on law or

(ii) legal services

(iii) or assistance in some legal proceeding, and

(d) not for the purpose of committing a crime or tort; and

(4) the privilege has been

(a) claimed and

(b) not waived by the client.

*United States v. Mobil Corp.*, 149 F.R.D. 533, 536 (N.D.Tex.1993) (quoting *In re LTV Sec. Litig.*, 89 F.R.D. 595, 600 (N.D.Tex.1981)); *see also United States v. El Paso Co.*, 682 F.2d 530, 538 n. 9 (5th Cir.1982); *In re Grand Jury Proceedings*, 517 F.2d 666, 670 (5th Cir.1975). These elements obviously differ slightly when the privilege is asserted for communications from the attorney to the client. *See Mobil*, 149 F.R.D. at 536.

■ The burden is on the party asserting the privilege to demonstrate how each document satisfies all the elements of the privilege, *see Hodges, Grant & Kaufmann v. United States*, 768 F.2d 719, 721 (5th Cir. 1985), including confidentiality and lack of waiver by breach of confidentiality.[1] *See In*

---

1. A breach of confidentiality results in waiver of the privilege. However, there are other ways the privilege can be waived, including failure to give notice that documents are being withheld based

on privilege, *see* Fed.R.Civ.P. 26(b)(5), advisory committee note (1993 amend.), affirmative reliance, *see Conkling v. Turner*, 883 F.2d 431, 434

re Grand Jury Proceedings, 680 F.2d 1026, 1029 (5th Cir. Unit A 1982) (Rubin concurring) ("The party who invokes the attorney-client privilege has the burden of establishing both the existence of an attorney-client relationship and the confidential nature of the communication.") (citing United States v. Flores, 628 F.2d 521, 526 (9th Cir.1980); United States v. Kelly, 569 F.2d 928, 938 (5th Cir.1978)); United States v. Miller, 660 F.2d 563, 570 (5th Cir.1981) (finding that the privilege proponent failed to meet his burden of proving that disclosure of documents by accountant to IRS did not constitute waiver); Mobil, 149 F.R.D. at 536 (listing lack of waiver as an element essential to establishing the privilege). The attorney-client privilege is to be strictly construed, i.e., interpreted " 'within the narrowest possible limits consistent with the logic of its principle.' " United States v. Pipkins, 528 F.2d 559, 563 (5th Cir.1976) (quoting In re Horowitz, 482 F.2d 72, 81 (2d Cir.1973)).

■ The privilege requires both intent that the communication remain confidential and that the communication actually remained confidential. A communication that would otherwise be privileged loses its protection if it is shared with a third party who does not have a common legal interest. See In re Auclair, 961 F.2d 65, 69 (5th Cir.1992); New Orleans Saints v. Griesedieck, 612 F.Supp. 59, 63 (E.D.La.1985) (The presence of persons who are neither lawyers nor clients negates the confidentiality necessary to the privilege); LTV, 89 F.R.D. at 603–04 ("[T]he communication must have been made and maintained in confidence under circumstances where it is reasonable to assume that disclosure to third parties was not intended") (citing Pipkins, 528 F.2d at 563 ("It is vital to a claim of privilege that the communication have been made and maintained in confidence.")).

■ The privilege protects attorney-client communications, not information contained within the communications. See LTV, 89 F.R.D. at 603 (quoting Upjohn, 449 U.S. at 395, 101 S.Ct. 677); see generally Paul R. Rice, Attorney Client Privilege in the United

States § 5.1 (2d ed.1999). Thus, a client may not refuse to disclose facts or documents simply because they were communicated or given to an attorney. See Fisher v. United States, 425 U.S. 391, 403–04, 96 S.Ct. 1569, 48 L.Ed.2d 39 (1976); U.S. v. Davis, 636 F.2d 1028, 1040–41 (5th Cir. Unit A 1981) (unprivileged documents are not rendered privileged by depositing them with an attorney); Lahr v. Fulbright & Jaworski, No. 3:94–CV–0981–D,1996 U.S. Dist. LEXIS 20133, at *17 n. 3 (N.D.Tex. July 11, 1996) (citing Upjohn, 449 U.S. at 395–96, 101 S.Ct. 677) (facts known to witnesses do not become privileged when they are communicated to an attorney). On the other hand, an attorney-client communication does not lose its privileged status because it contains non-privileged facts or consists of otherwise non-privileged documents. See High Tech Communications, Inc. v. Panasonic Co., Civ. A. No. 94–1477, 1995 WL 45847, at *4–*5 (E.D.La. Feb.2, 1995) (citing Upjohn, 449 U.S. at 395–96, 101 S.Ct. 677); LTV, 89 F.R.D. at 613 (although unprivileged business records had to be disclosed, the client did not have to disclose which of those business records were provided to its attorney who was investigating the client at its request); El Paso, 682 F.2d at 538 n. 10 (5th Cir.1982) (noting that disclosure to a third party of the underlying facts contained in a privileged communication does not affect the privileged nature of the communication).

■ Only communications made with a legal objective are protected. As one court has observed:

> [T]he mere fact that a communication is made directly to an attorney, or an attorney is copied on a memorandum, does not mean that the communication is necessarily privileged. The information-holder's motive for the communication, to the extent that it can be discerned from the document, thus is an important consideration. "If the information-holder will communicate with the attorney even if the privilege does not exist, or if a nonlegal objective is sufficient to stimulate commu-

(5th Cir.1989), and preparation of a witness or refreshing the recollection of a witness, see Fed.

R.Evid. 612.

nication with the attorney, then there is no reason for the privilege to attach."
*United States Postal Service v. Phelps Dodge Ref. Corp.*, 852 F.Supp. 156, 160 (E.D.N.Y. 1994) (citations omitted). The privilege "protects only those disclosures—necessary to obtain informed legal advice—which might not have been made absent the privilege." *Fisher*, 425 U.S. at 404, 96 S.Ct. 1569.

■■■ "[T]he attorney-client privilege attaches to corporations [and organizations] as well as to individuals." *Commodity Futures Trading Comm'n v. Weintraub*, 471 U.S. 343, 348, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985) (citing *Upjohn*, 449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584). Because corporations can only act through their agents, communications between corporate agents and attorneys are protected if the agent is empowered to act on behalf of the corporation. *See id.* Thus, the privilege extends not only to communications between officers and directors and the corporation's attorney, *see id.* at 348–49, 105 S.Ct. 1986, but also to communications between a corporation's lower level employees acting at the direction of its officers and the corporation's attorney. *See Rubin v. United States*, 525 U.S. 990, 119 S.Ct. 461, 462, 142 L.Ed.2d 413 (Breyer, J., dissenting from the denial of certiorari, characterizing the *Upjohn* holding); *see also McGuire v. Sigma Coatings, Inc.*, 48 F.3d 902, 904 n. 4 (5th Cir.1995) (citing *Upjohn*, 449 U.S. at 393, 101 S.Ct. 677); *El Paso*, 682 F.2d at 538 n. 8 ("as long as the communications were made to the attorney to assist him in giving legal advice to the client corporation"); *LTV*, 89 F.R.D. at 602 ("[T]he attorney-client privilege applies to communication made by corporate employees concerning matters pertinent to their job tasks, regardless of echelon if sought by the corporation's attorney in order to formulate and render legal advice to the corporation.").

■■■ While the privilege expressly protects only *client* communications, the protection has been extended to protect attorney communications as well. There are essentially two lines of thought on the protection of attorney communications. *See*

Edna Selan Epstein, *The Attorney–Client Privilege and the Work Product Doctrine*, 40–41 (3d ed.1997). Some circuits construe the privilege more narrowly so that it protects communications from the attorney only to the extent that disclosing an attorney communication would reveal the substance of a confidential client communication. *See id.* Thus, the protection of attorney communications in those circuits is derivative. The Fifth Circuit, however, is a "broad construction"[2] circuit, where the protection of attorney communications is direct. *Id.* at 44. Consequently, the attorney-client privilege protects "any communication from an attorney to his client when made in the course of giving legal advice, whether or not that advice is based on privileged communications from the client." *Mobil*, 149 F.R.D. at 536 (citing *LTV*, 89 F.R.D. at 602); *see also Upjohn*, 449 U.S. at 390, 101 S.Ct. 677 (the privilege exists to protect the giving of professional advice as well as the giving of information to the lawyer to enable him to give sound and informed advice).

The attorney-client privilege has also been extended to protect items such as research, notes, files and memoranda that are not themselves confidential communications, if disclosure would reveal the substance of any confidential communications between attorney and client that were made in the course of seeking or giving legal advice. *See Upjohn*, 449 U.S. at 401, 101 S.Ct. 677 (If an attorney's notes or memoranda "reveal communications, they are, in this case, protected by the attorney-client privilege."); *LTV*, 89 F.R.D. at 614 ("[N]otes of discussions between client and attorney" for the purpose of obtaining legal advice are privileged.); *United States v. Willis*, 565 F.Supp. 1186, 1194 (S.D.Iowa 1983) (If client confidences can be inferred from an attorneys' notes or research materials, then those items are privileged against production.); *Cedrone v. Unity Sav. Ass'n*, 103 F.R.D. 423, 429 (E.D.Pa.1984) ("[I]t is inconceivable that an internal memorandum between attorneys in the same office concerning the representation of a client, utilizing confidential information provided by

---

2. "Broad construction" applies only to the distinction between direct protection of attorney statements and derivative protection. As a general matter of construction, the attorney-client privilege is to be interpreted "within the narrowest possible limits consistent with the logic of its principle." *Pipkins*, 528 F.2d at 563.

that client, could be anything but protected by the privilege."). Of course, in such situations, the party asserting the privilege still has the burden to show that disclosure of those items would reveal communications, not merely facts or non-communicative documents, and that those communications were made in the course of seeking or rendering legal services.

### B. Work Product Doctrine

The federal attorney-work-product doctrine is codified in the Federal Rules of Civil Procedure:

> Trial Preparation: Materials. Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Fed.R.Civ.P. 26(b)(3).

The work-product doctrine thus provides qualified protection of documents and tangible things prepared in anticipation of litigation including "a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements." *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir.1991) (citing *Upjohn*, 449 U.S. at 400, 101 S.Ct. 677; *El Paso*, 682 F.2d at 543); *see also United States v. Nobles*, 422 U.S. 225, 237–39, 95 S.Ct. 2160, 45 L.Ed.2d 141 (1975)

(noting that the protection is qualified, not absolute). The level of protection from disclosure depends on whether work-product is classified as "ordinary" or "opinion" work-product. *See Sporck v. Peil*, 759 F.2d 312, 316 (3d Cir.1985). Ordinary work-product generally consists of "primary information, such as verbatim witness testimony or objective data" collected by or for a party or a party's representative. *Kent Corp. v. NLRB*, 530 F.2d 612, 624 (5th Cir.1976); *but see Sporck*, 759 F.2d at 315–16 (an attorney's compilation of otherwise unprotected documents can constitute opinion work-product because identification of the documents as a group reveal the lawyer's selection process and thus his mental impressions); *LTV*, 89 F.R.D. at 613 ("LTV's collations or choice of samples need not be identified...."). A court may order production of ordinary work-product if the party seeking production can show that it has a "substantial need" for the material in the preparation of its case and that it cannot obtain the substantial equivalent of the material by other means without "undue hardship." Fed.R.Civ.P. 26(b)(3). Opinion work-product, on the other hand, which consists of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party, is afforded an almost absolute protection from discovery. *See In re International Sys. and Controls Corp. Sec. Litig.*, 693 F.2d 1235, 1240 (5th Cir.1982). A court cannot order production of opinion work-product absent a showing of even higher necessity, which is a rare situation if it exists at all. *See Hickman v. Taylor*, 329 U.S. 495, 513, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *In re International Sys.*, 693 F.2d at 1240.

The party asserting the protection bears the burden of showing that the materials warrant work-product protection. *See Hodges, Grant & Kaufmann*, 768 F.2d at 721. This burden is satisfied by demonstrating the presence of the following elements [3]:

1) the materials are documents or tangible things [4]

2) "prepared in anticipation of litigation or for trial," [5] i.e.,

---

**3.** *See generally* 8 Charles Alan Wright, Arthur R. Miller & Richard L. Marcus, Federal Practice and Procedure § 2024 (2d ed.1994).

**4.** *See* Fed.R.Civ.P. 26(b)(3).

**5.** *Id.*

a) at a time when the party had reason to anticipate litigation,[6] and

b) "the primary motivating purpose behind the creation of the document was to aid in possible future litigation ...,"[7]

3) by or for a party or by or for a party's representative,[8] and

4) if seeking to show that material is opinion work-product, that the material contains the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party.[9]

■ "[T]he burden of showing that the materials that constitute work-product should nonetheless be disclosed is on the party who seeks their production." *Hodges, Grant & Kaufmann,* 768 F.2d at 721. The party seeking discovery must show:

1) "substantial need of the materials in the preparation of the party's case"[10]

2) inability "without undue hardship to obtain the substantial equivalent of the materials by other means,"[11] and

3) in the case of opinion work-product, circumstances that constitute the rare case that justifies production.[12]

■ Ordinarily, the work-product doctrine should only be applied after it is decided that the attorney-client privilege does not apply. *See, e.g., Upjohn,* 449 U.S. at 397, 101 S.Ct. 677 ("To the extent that the material subject to the summons is not protected by the attorney-client privilege as disclosing communications between an employee and counsel, we must reach the ruling by the Court of Appeals that the work-product doctrine does not apply...."); *High Tech Communications,* 1995 WL 45847, at *5 (ordering the magistrate judge to consider work-product protection if the party failed to establish the attorney-client privilege). This is because the work-product doctrine expressly applies only to "documents and tangible things otherwise discoverable." Fed. R.Civ.P. 26(b)(3). If the attorney-client privilege applies to a particular item, it is absolutely undiscoverable and the work-product rule does not apply.

■ The work-product doctrine is narrower than the attorney-client privilege in that it only protects materials prepared "in anticipation of litigation," Fed.R.Civ.P. 26(b)(3), whereas the attorney-client privilege protects confidential legal communications between an attorney and client regardless of whether they involve possible litigation. The work-product doctrine is obviously broader in that it protects materials prepared in anticipation of litigation " 'by or for' the party or the party's representative," even if an attorney is not involved. *LTV,* 89 F.R.D. at 612

---

**6.** The Fifth Circuit focuses more on the motivational factor than it does the temporal factor. *See In re Kaiser Aluminum and Chem. Co.,* 214 F.3d 586, 593 (5th Cir.2000) (Litigation need not be imminent " 'as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation' ") (quoting *El Paso,* 682 F.2d at 542 (citing *Davis,* 636 F.2d at 1040)). However, at the least, it can be said that a court should consider the temporal element when it determines whether the motivating purpose was to aid in possible litigation. *See, e.g., Kent,* 530 F.2d at 623–24 ("Since 'the prospect of litigation [was] identifiable because of specific claims that [had] already arisen,' the reports are subject to a prima facie valid claim of privilege.") (alterations in original) (citation omitted); *Davis,* 636 F.2d at 1040 (concluding that tax workpapers were not prepared in anticipation of litigation because there was "no evidence that Davis had reason to expect future trouble with the IRS."); *LTV,* 89 F.R.D. at 612 (basing the court's conclusion that work-product protection was warranted on the fact that "[f]rom the moment the SEC investigation commenced with the issuance of subpoenas in November 1977, LTV was virtually assured of a civil suit.").

**7.** *In re Kaiser Aluminum and Chem. Co.,* 214 F.3d at 593. "[M]aterials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation ..." are not protected. *El Paso,* 682 F.2d at 542; *see also In re Grand Jury Proceedings,* 601 F.2d 162, 171 n. 7 (5th Cir.1979) (corporate records do not constitute work-product).

**8.** *See* Fed.R.Civ.P. 26(b)(3).

**9.** *See id.; In re International Sys. and Controls Corp. Sec. Litig.,* 693 F.2d at 1240.

**10.** *Id.*

**11.** *Id.*

**12.** One commentator suggests that this standard "is met almost solely when an effective 'waiver' has occurred by virtue of putting the lawyer's mental impressions at issue in the litigation itself." Epstein, *supra* at 373.

(quoting *Diversified Indus., Inc. v. Meredith,* 572 F.2d 596, 603 (8th Cir.1977)).

The work-product doctrine is also broader in that, unlike the attorney-client privilege, work-product protection is not necessarily waived by disclosure to a third party who does not have a common legal interest. Disclosure of work-product can result in waiver of the work-product protection, but only if it is disclosed to adversaries or treated in a manner that substantially increases the likelihood that an adversary will come into possession of the material. *See High Tech Communications, Inc. v. Panasonic Co.,* Civ. A. No. 94–1477, 1995 WL 83614, at *5 (E.D.La. Feb.24, 1995) (citing *In re Convergent Technologies,* 122 F.R.D. 555, 564 (N.D.Cal.1988); *Anderson v. Torrington Co.,* 120 F.R.D. 82, 86–87 (N.D.Ind.1987)); *Aiken v. Texas Farm Bureau Mutual Ins. Co.,* 151 F.R.D. 621, 623 n. 2 (E.D.Tex.1993) (citing *Shields v. Sturm, Ruger & Co.,* 864 F.2d 379, 382 (5th Cir.1989); *United States v. AT & T,* 642 F.2d 1285, 1299 (D.C.Cir.1980)). Unlike the attorney-client privilege, the burden of proving waiver of work-product protection falls on the party asserting waiver. *See High Tech Communications,* 1995 WL 83614, at *5.

### C. Joint Defense Privilege

The "joint defense" privilege, sometimes called the "common interest" or "community of interest" rule is not an independent privilege, but merely an exception to the general rule that no privilege attaches to communications that are made in the presence of or disclosed to a third party. *See In re Auclair,* 961 F.2d at 69 (holding that the joint defense privilege preserved the attorney-client privilege against waiver in the context of a group with common interests seek-

ing common representation); *LTV,* 89 F.R.D. at 604 (The joint defense privilege merely "extends the attorney-client privilege to communications made in the course of joint defense activities."). If a communication satisfies all the elements of the attorney-client privilege except confidentiality, the joint-defense privilege will preserve the attorney-client privilege, so long as the only breach of confidentiality is sharing the communication "with a third person who has a common legal interest with respect to the subject matter of the communication." *In re Auclair,* 961 F.2d at 69 (quoting *Hodges, Grant & Kaufmann,* 768 F.2d at 721). Thus, in addition to establishing the applicability of the attorney-client privilege, the elements necessary to invoke the joint defense privilege are: 1) a common legal interest between all persons with whom the communication is shared; and 2) a communication exchanged among those persons "in confidence, 'not ... for the purpose of allowing unlimited publication and use, but rather, ... for the limited purpose of assisting in their common cause.' " [13] *LTV,* 89 F.R.D. at 604 (quoting *Wilson P. Abraham Const. v. Armco Steel Corp.,* 559 F.2d 250, 253 (5th Cir.1977) (citing *Hunydee,* 355 F.2d at 185)).

The joint defense privilege has also been applied as an extension of the work-product doctrine in situations where disclosure of work-product could otherwise result in waiver. *See Killebrew v. City of Greenwood,* No. 4:95CV355–B–B, 1997 WL 208140, at *2 (N.D.Miss. April 11, 1997) ("The rule applies to both attorney-client and work product privilege."); *see also Johnston v. Dillard Dept. Stores, Inc.,* Civ. A. No. 92–0740, 1993 WL 459932, at *1 (E.D.La. Oct.29, 1993) (applying the "community of interest" rule to the work-product protection) (citing *In re*

---

**13.** The LTV court stated an additional requirement that the shared communications must be " 'intended to facilitate representation in possible subsequent proceedings.' " 89 F.R.D. at 604 (quoting *Hunydee v. United States,* 355 F.2d 183 (9th Cir.1965)). The *LTV* court thus limited application of the rule to "actual or potential defendants," which would exclude situations where people seek legal counsel without anticipation of litigation. However, subsequent statements of the rule by the Fifth Circuit in *Auclair* and *Hodges, Grant & Kaufmann* do not so limit the rule, stating simply that the rule applies to communi-

cations shared with "a third person who has a common legal interest." *Auclair,* 961 F.2d at 69 (quoting *Hodges, Grant & Kaufmann,* 768 F.2d at 721). The attorney-client privilege is not limited to communications involving litigation, and the court sees no reason why the joint defense rule (despite the implication inherent in its name) should be limited to communications between defendants and potential defendants in litigation. Therefore, this court will apply the rule to any person with a common legal interest consistent with the position taken by the Fifth Circuit.

*Crazy Eddie Sec. Litig.*, 131 F.R.D. 374, 379 (E.D.N.Y.1990) ("Counsel may therefore share work product, including ideas, opinions, and legal theories, with those having similar interests in fully preparing litigation against a common adversary.")). However, the joint defense privilege is only applicable for protection of work-product where work-product is disclosed to persons who both share a common interest in litigation and are adversaries or so situated that disclosure to them makes it substantially more likely that an adversary will come into possession of the materials.

▮▮▮▮ Should parties with a common legal interest who have shared privileged communications or work-product later become adverse, the joint defense privilege can be waived by any one of the persons who was privy to the communication or possessed the materials. " '[I]n any later controversy between or among those clients, the privilege could not stand as a bar to full disclosure at the instance of any one of them.... Nonetheless, in the absence of such event and in relation to the rest of the world, the attorney-client communications issuing from such a joint conference are invested with absolute secrecy.' " *LTV*, 89 F.R.D. at 605 (quoting *In re Grand Jury Subpoena Duces Tecum Dated November 16, 1974*, 406 F.Supp. 381, 386 (S.D.N.Y.1975)). "Even should such allies later become estranged, they would arguably still be entitled jointly to invoke the attorney-client privilege to protect shared confidences from disclosure at the behest of a third party." *Id.* at 604–05.

### D. Evidence Considered in Evaluating Assertions of Privilege or Protection

The elements of attorney-client privilege, work-product protection, or joint defense privilege are usually established by affidavits from individuals with personal knowledge of the relevant facts, *see Varo, Inc. v. Litton Systems, Inc.*, 129 F.R.D. 139, 142 (N.D.Tex. 1989), including in camera affidavits, *see, e.g., Philadelphia Hous. Auth. v. American Radiator*, 294 F.Supp. 1148, 1150 (E.D.Pa.1969). However, courts may also rely on live testimony or in camera inspection of the documents, *see MessagePhone, Inc. v. SVI Sys., Inc.*, No. 3–97–CV–1813–H, 1998 WL 874945,

at *1 (N.D.Tex. Dec.8, 1998) (citing *Varo*, 129 F.R.D. at 141–42), privilege logs, *see CSC Recovery Corp. v. Daido Steel Co., Ltd.*, No. 94CIV.9214 (LAP)(THK), 1997 WL 661122, at *2 (S.D.N.Y. Oct. 22, 1997) ("Daido's privilege log, combined with Ms. Newton's affidavit ... and the documents themselves, which have been submitted for review, are more than sufficient to support the asserted claims of privilege."); *Bowne of New York City v. AmBase Corp.*, 150 F.R.D. 465, 474 (S.D.N.Y. 1993) (noting that the court may rely on adequate privilege logs in allowing a party to prove the factual basis for its claims of privilege), deposition testimony, *see Motley v. Marathon Oil Co.*, 71 F.3d 1547, 1550 (10th Cir.1995); *Bowne*, 150 F.R.D. at 474 (In addition to the information contained in the privilege logs, "[o]ther required information ... is then typically supplied by affidavit or deposition testimony."), and other information filed with the court such as pleadings, motions, briefs and exhibits, legal memoranda, discovery responses or other undisputed facts. *See* Paul R. Rice, *supra* § 11.10, at 87–89 (citing *Motley*, 71 F.3d 1547; *International Tel. & Tel. Corp. v. United Tel. Co. of Florida*, 60 F.R.D. 177, 182 (M.D.Fla.1973)). The party asserting the privilege may attempt to rely on one or a combination of these methods so long as they demonstrate all elements of the privilege. However, depending on the circumstances of the case, a court may require proof by specific forms of evidence, for example, a separate affidavit establishing each element of the privilege or protection for each document. *See, e.g., United States v. AT & T*, 86 F.R.D. 603, 604–05 (D.D.C.1979) (requiring parties to submit documents for in camera review with individual attachments including any information necessary to establish the factual elements required by the privilege invoked and a sworn affidavit verifying that information).

### III. ANALYSIS

▮▮▮▮ The court begins its analysis by addressing a deficiency that negates all of Defendants' claims of attorney-client privilege and joint defense privilege. Defendants assert that the allegedly privileged communications are privileged so long as they "[were] intended to remain confidential and [were]

made under such circumstances that [they were] reasonably expected and understood to be confidential." Defs.' Resp. to Pls.' Mot. to Compel and Br. in Support at 4 (quoting *In re Auclair*, 961 F.2d at 70). And TADA Chief Counsel Karen Coffey's affidavit filed in support of the privileges states only that the documents in question were intended to be and were reasonably expected and understood to remain confidential. *See* Defs.' Resp. to Pls.' Mot. to Compel and Br. in Support, Ex. A, ("Coffey Affidavit") at 2–5. These assertions misstate the law and are insufficient to preserve the attorney-client privilege.

Defendants' conception mistakes a necessary element of the privilege for a condition that is sufficient to create the privilege. The proponent of the attorney-client privilege or joint defense privilege must show that the privileged communications not only were intended to be kept confidential, but that they were, in fact, kept confidential. A communication that would otherwise be privileged loses its protection if it is shared with a third party who does not have a common legal interest. *See LTV*, 89 F.R.D. at 603–04 ("[T]he communication must have been made and maintained in confidence under circumstances where it is reasonable to assume that disclosure to third parties was not intended") (citing *Pipkins*, 528 F.2d at 563 ("It is vital to a claim of privilege that the communication have been made and maintained in confidence.")); *Griesedieck*, 612 F.Supp. at 63 (presence of third parties destroys the privilege); *El Paso*, 682 F.2d at 539–41 (where the client's disclosure of its lawyer's tax-pool analysis to independent auditors resulted in waiver of the privilege).

*In re Auclair*, cited by Defendants, does not change this rule. *Auclair* dealt with the situation where multiple potential clients meet with an attorney regarding possible representation and make revelations to the attorney before representation is actually agreed upon. The *Auclair* court held that, in that situation, the potential clients do not waive the attorney-client privilege because of the presence of the other prospective clients. *See Auclair*, 961 F.2d at 70–71. This holding does not change the general rule that waiver results from disclosure to third parties who do not have a common legal interest. Rath-

er, *Auclair* simply applies the joint defense privilege to the pre-representation stage. Defendants do not (and could not seriously) contend that the correspondence sent by Coffey to TADA members constitutes a pre-representation meeting; therefore, the *Auclair* holding is inapposite. Because Defendants have not demonstrated, or even attempted to demonstrate, that their allegedly privileged communications were kept confidential, they have failed to establish the attorney-client privilege or the joint defense privilege as to any of the withheld documents.

### A. COMMUNICATIONS BETWEEN TADA AND COUNSEL

PRIV 1–4 is a letter to Tom Blanton, a Vice President of TADA, from William W. Kilgarlin, a lawyer with Popp & Ikard, who provides legal advice and services to TADA. Defendants assert the attorney-client privilege for this document. Plaintiffs argue that "[t]his Court should compel defendants to produce documents written by or sent to TADA's lobbyists Tom Blanton or Sam Kelley" because they do not seek or provide legal advice, but rather, relate to lobbying and business matters. Pls.' Reply in Support of Pls.' Mot. to Compel at 4.

Communications between a lawyer and client related to lobbying efforts are not necessarily protected by the attorney-client privilege. However, communications regarding legal advice or services that otherwise satisfy the elements of the privilege do not lose their protection merely because they are given by a lawyer who also performs lobbying services or because the legal advice given relates to legislation that is the subject of lobbying efforts. Communications that merely summarize the content of public meetings or that relate to the status of lobbying efforts have been held not to be privileged where they do not rise to the level of legal advice. *See North Carolina Elcetric Membership Corp. v. Carolina Power & Light Co.*, 110 F.R.D. 511, 517 (M.D.N.C. 1986). If advice is characterized as merely political, rather than legal, it is also not protected. *See Republican Party of North Carolina v. Martin*, 136 F.R.D. 421, 426

(E.D.N.C.1991). And a communication telling a lobbyist what to disclose to a legislator in the course of lobbying efforts has been held to be unprotected because it contemplates disclosure to a third party. *See Phelps Dodge*, 852 F.Supp. at 164. But none of this is to say that legal advice loses its protection whenever it is given in the context of lobbying. Legal advice on pending or existing legislation can be privileged. *See Weissman v. Fruchtman*, No. 83 Civ. 8958(PKL), 1986 WL 15669, at *15 (S.D.N.Y. Oct.31, 1986). If a lawyer who is also a lobbyist gives advice that requires legal analysis of legislation, such as interpretation or application of the legislation to fact scenarios, that is certainly the type of communication that the privilege is meant to protect. PRIV 1 4 consists solely of legal advice and requests for legal advice regarding analysis of legislation, and would, therefore, qualify for the attorney-client privilege but for the failure to establish that these documents were actually kept confidential. Because Defendants have failed to establish the element of confidentiality, these documents must be produced to Plaintiffs.

PRIV 6–8 and PRIV 25–27 are handwritten notes taken by Karen Coffey, Chief Counsel and a Vice President of TADA. Defendants assert the attorney-client privilege for both sets of documents and the work-product protection for PRIV 6–8. Plaintiffs have contested the legal nature of these documents, arguing that they consist of or relate to mere business advice, which is not protected by the attorney-client privilege. *See American Medical Sys., Inc. v. National Union Fire Ins. Co. of Pittsburgh*, No. CIV.A. 98–1788, 1999 WL 970341, at *7 (E.D.La. Oct.22, 1999) (citing *First Wisconsin Mortgage Trust v. First Wisconsin Corp.*, 86 F.R.D. 160, 174 (E.D.Wis.1980)); *Phelps Dodge*, 852 F.Supp. at 160.

 When an attorney acts in both a legal and a business capacity, the resulting communications are only privileged if the legal aspect predominates. *See Boca Investerings Partnership v. United States*, 31 F.Supp.2d 9, 11–12 (D.D.C.1998) (citing *North Am. Mortgage Investors v. First Wisconsin Nat'l Bank*, 69 F.R.D. 9, 11 (E.D.Wis. 1975) ("the advice given must be predominately legal, as opposed to business, in na-

ture."); *United States v. IBM*, 66 F.R.D. 206, 212–13 (S.D.N.Y.1974) ("the attorney must give predominately legal advice . . . not solely, or even largely, business advice")); *Phelps Dodge*, 852 F.Supp. at 160. But legal and business issues are often inextricably intertwined. Therefore, in determining whether advice is predominately legal or business in nature, courts should resolve doubts in favor of the privilege. *See, e.g., Phelps Dodge*, 852 F.Supp. at 160 n. 2.

 From reading these notes, the court cannot even discern the general character of the notes, much less determine whether they relate to business or legal advice. Moreover, Defendants have not told the court whether these notes are the result of research or whether the notes document meetings or conversations with clients or third parties. The privilege log states that PRIV 6–8 are "handwritten notes re property tax" authored by Coffey and received by Gene Fondren, TADA President, and Tom Blanton, TADA Vice President for Legislative Affairs. But it is not clear whether Defendants mean that Coffey gave the notes to Blanton and Fondren or merely based legal advice she gave them on the notes. And Defendants have not shown that these notes have any legal significance or reveal any privileged communications. The affidavit submitted by Defendants merely recites that "[t]hese documents contain notes I prepared so that I may render legal advice to the TADA." Coffey Aff. at 5. "Were such conclusory statements sufficient to establish the attorney-client privilege, almost any document could be protected from disclosure. More specific evidence of the privilege is required." *Interphase Corp. v. Rockwell Int'l Corp.*, No. 3–96–CV–0290–L 1998 WL 664969, at *2 (N.D.Tex. Sept. 22, 1998). Because Defendants have failed to carry their burden of proof with regard to subject matter and confidentiality, these documents must be produced to Plaintiffs.

PRIV 9 is an e-mail memo from Karen Coffey to Gene Fondren, TADA President, Tom Blanton, and Donna Norton. The memo deals with how members of the TADA may comply with a particular statute. This memo constitutes communications regarding

legal advice. However, Defendants have not demonstrated that Donna Norton is a client or an attorney rather than a third party in this context. As noted earlier, disclosure to a third party who does not have a common legal interest destroys the confidentiality necessary for the privilege to attach. Because Defendants have failed to carry their burden of proving that the communication was intended to be or was actually kept confidential, this document must be produced to Plaintiffs.

PRIV 10–13 is a copy of a pre-existing document authored by a third party regarding analysis of a statute. Jim Popp, a lawyer with Popp & Ikard, who provides legal advice and services to TADA, made handwritten notations on the document with his additional analytical points and sent it to Karen Coffey to give her legal advice about the analysis of the statute. Defendants' assert the attorney-client privilege for this document. Popp's handwritten comments are obviously privileged because they constitute pure legal advice from Popp to Coffey. The copy of the document itself is also privileged, despite the fact that it was written by a third party. Although the original document was not a communication between attorney and client, Popp's act of sending the pre-existing document to Coffey as the means of providing legal advice constitutes a privileged communication. The document cannot be disclosed without revealing the substance of his legal advice to her, and therefore, the entire document is privileged. Alternatively, the document would be privileged even if it had not been marked up or sent to the client because disclosing it would reveal the substance of research that was done in order to provide legal advice, and would thus reveal the nature of the legal advice or services being rendered. Nonetheless, the privilege has been waived because Defendants have failed to establish that this document was actually kept confidential.

PRIV 14–16 is a memorandum from Tom Blanton to Gene Fondren and Karen Coffey. Defendants assert the attorney-client privilege for this document. The memo indicates that it was copied to "Maureen." The memo discusses compliance with a statute and seeks legal advice regarding compliance with a statute. The document qualifies as a privileged document from a subject matter standpoint; however, Defendants have failed to carry their burden of proof because they have not identified "Maureen" or explained her relationship to the other parties to this communication. Because Defendants have failed to show that the communication was intended to be or actually was kept confidential, this document must be produced to Plaintiffs.

PRIV 17 is a memorandum from Tom Blanton to Gene Fondren, Karen Coffey, and Bill Wolters, another of TADA's Vice Presidents. The memo consists of a discussion about potential legal action and its possible effects on the TADA. Defendants assert the attorney-client privilege for this memo. This document is a communication made in the context of legal services between clients and their in-house counsel and would be protected by the attorney-client privilege but for Defendants failure to establish that this document was actually kept confidential. Because Defendants have failed to establish confidentiality, this document must be produced to Plaintiffs.

PRIV 18–19 is a memo from Tom Blanton to Gene Fondren, Karen Coffey, and Bill Wolters. The memo raises legal issues regarding compliance with a statute and requests advice on those issues. This document is a communication made in the context of legal services between clients and their in-house counsel and would be protected by the attorney-client privilege but for Defendants' failure to establish that it was actually kept confidential. Because Defendants' have failed to establish confidentiality, this document must be produced to Plaintiffs.

PRIV 20–22 is a memorandum from Karen Coffey. Defendants assert the attorney-client privilege for this document. The memo consists of discussion of legal issues and constitutional and statutory analysis. Thus, the subject matter of the memo qualifies for the privilege. However, in addition to the aforementioned overall deficiency in proving confidentiality, the memo does not indicate, and Defendants have not indicated, who received this memo or whether it was simply a memo to the files. Defendants have failed to meet their burden of proof that the

memo was intended to be kept or was actually kept confidential; therefore, the document must be produced to Plaintiffs.

■ PRIV 23–24, 76–77, 80–81 and 82–83 are copies of an April 13, 1993, letter from Sam Kelley, outside attorney for TADA, to Gene Fondren. The letter consists of legal analysis regarding SB 878 and ad valorem taxes in general. Defendants assert the attorney-client privilege for these documents. Plaintiffs argue that this document is not protected because it is a communication related to lobbying and, alternatively, that the attorney-client privilege has been waived. This letter is a communication of legal advice to the TADA by its attorney, Sam Kelley, and would thus be protected by the attorney-client privilege but for waiver of the privilege.

Plaintiffs theory of waiver is as follows: The defendant dealers in this case have attempted to show that they each made an independent decision to charge the VIT directly to purchasers by itemizing the VIT on purchase order and retail installment contracts. The defendant dealers assert that their parallel conduct was not the result of a conspiracy to fix prices, rather, that they took this action for a number of reasons, including their reliance on an opinion from the Texas Consumer Credit Commissioner that itemization was proper. The opinion that TADA relied upon was contained in the April 13, 1993, letter from Kelley to Fondren. Therefore, the TADA is affirmatively relying on this letter to establish a defense of independent action, and such reliance results in waiver under the rule of *Conkling v. Turner*, 883 F.2d at 434 ("The great weight of authority holds that the attorney-client privilege is waived when a litigant 'place[s] information protected by it in issue through some affirmative act for his own benefit, and to allow the privilege to protect against disclosure of such information would be manifestly unfair to the opposing party.' ").

Defendants counter that,

[they] have consistently relied on a *fact*, not privileged and confidential information, that the Texas Consumer Credit Commissioner, Albert Endsley, informed TADA, through its attorney, Sam Kelley, that it would be appropriate under the Texas Credit Code (now the Texas Finance Code) to disclose the vehicle inventory tax as an "itemized charge" on retail installment contracts in motor vehicle transactions. Thus, Defendants have not relied on confidential information to assert a position and thereafter sought to protect that confidential information.

Defs.' Resp. to Pls.' Submission of Testimony Pursuant to Court Order at 1. Defendants misapprehend the relevance of the distinction between facts and communications.

■ The fact-versus-communication distinction is crucial to determining whether the attorney-client privilege exists. Although the commissioner's opinion is a "fact," not in itself an attorney-client communication, a letter communicating that fact could nonetheless be privileged. While Defendants might be required to disclose the underlying fact in response to an appropriate request, *see LTV*, 89 F.R.D. at 603; Paul R. Rice, *supra* § 5.1, they would not, absent waiver, be required to disclose a privileged communication merely because it consisted of such facts, *see High Tech Communications*, 1995 WL 45847, at *4–*5 (citing *Upjohn*, 449 U.S. at 395–96, 101 S.Ct. 677). The fact-versus-communication distinction is also crucial, in the instant case, to the issue of waiver of privileges or work-product protection. Mere disclosure of the underlying fact would not waive the privilege or protection as to a communication containing that fact. *See El Paso*, 682 F.2d at 538 n. 10 (disclosure to a third party of the facts contained in a privileged communication does not affect the privileged nature of the communication). But revealing that a communication contained that fact discloses the substance of the communication and, thus, waives the privilege (or the work-product protection, if disclosed to an adversary) as to that communication. Disclosing or describing an attorney-client communication waives the privilege or protection. *See El Paso*, 682 F.2d at 538 (quoting *Davis*, 636 F.2d at 1043 n. 18); *High Tech Communications*, 1995 WL 45847, at *5.

Defendants have waived the attorney-client privilege as to this entire letter, not because they asserted as a defense that they

relied on the Commissioner's opinion, but because they substantiated this defense by telling opposing counsel and the court that the opinion was communicated in the letter. Their motive in doing so was evidently to prove that they were aware of the opinion as of the time they received the letter. But in so doing, they disclosed a significant portion of the contents of that letter. Gene Fondren, TADA President discussed the substance of the Kelley letter in his March 16, 2000 deposition:

Q. Okay. At some point while the legislature was still in session, did you receive any opinion letter from the consumer credit commissioner?

A. No, sir, I did not, to the best of my knowledge, receive a letter. I received information relayed to me about the consumer credit commissioner's position. But I did not receive a written opinion or a written interpretive letter I think they called it.

Q. Well, the information was relayed to you, was it from Mr. Kelley?

A. Again, I can't—yes, I can. I did receive the information from counsel, from Mr. Kelley.

Q. Was it in writing or oral?

A. I believe I received a written communication from Mr. Kelley.

Pls.' Br. and Submission of Testimony Pursuant to Court Order, Ex. 2 (Fondren Depo) at 87. And in their public filings with the court, Defendants revealed even more detail regarding the contents of the letter from Kelley to Fondren:

The April 13, Opinion Letter, however, does contain a factual statement relating to Mr. Kelley's discussions with Commissioner Endsley. This fact—that Commissioner Endsley believed that it was permissible to list the vehicle inventory tax as an "itemized charge" in accordance with the Texas Credit Code is completely consistent with the official interpretation letter that he issued on December 22, 1993 . . . .

Defs.' Resp. to Pls.' Submission of Testimony Pursuant to Court Order at 2. "[D]isclosure of any significant portion of a confidential communication waives the privilege as to the whole." *El Paso*, 682 F.2d at 538 (quoting *Davis*, 636 F.2d at 1043 n. 18). Therefore,

this letter must be produced to Plaintiffs in its entirety.

PRIV 78, 79 and 84 are listed on the privilege log as attachments to the letter identified as PRIV 23–24, 76–77, 80–81 and 82–83 ("Kelley Letter"). Defendants assert the attorney-client privilege for these attachments. As noted above, Defendants have waived the privilege as to the Kelley Letter, and therefore, have waived the privilege as to the attachments.

PRIV 28–29 is a memorandum from Gene Fondren to Bill Wolters, Karen Coffey, and Tom Blanton. Defendants assert the attorney-client privilege for PRIV 28–29. PRIV 30–49 is a memo and attachment from Tom Blanton to Gene Fondren, Karen Coffey, and Bill Wolters. Defendants assert the attorney-client privilege, work-product doctrine and joint defense privilege for PRIV 30–49. Both PRIV 28–29 and PRIV 30–49 discuss proposed changes to a piece of legislation. These communications relate to legal services because the proposed changes required Coffey's legal analysis and attention. The fact that these communications relate to lobbying efforts does not affect the privileged nature of the documents. Obtaining a legal opinion on the effect of proposed legislation or on the best way to accomplish certain goals through proposed legislation necessarily involves legal analysis and opinion, which is protected by the attorney-client privilege. However, neither the attorney-client privilege nor the joint defense privilege apply because Defendants have failed to establish that these documents were kept confidential.

Defendants have also failed to carry their burden of showing that PRIV 30–49 is protected by the work-product doctrine. Defendants assert only that this document was "prepared after litigation had commenced." Defs.' Resp. to Pls.' Mot. to Compel at 8. Establishing that a document was prepared after litigation was commenced is insufficient to prove that the document was prepared in anticipation of litigation. In fact, litigation need not have begun or even be imminent for the work-product doctrine to apply. What is crucial is that "the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *In*

*re Kaiser Aluminum and Chem. Co.,* 214 F.3d at 593 (citing *El Paso,* 682 F.2d at 542). Defendants have not told the court which litigation they are referring to or how this document was prepared to aid in that litigation, and the answer is not apparent from reading the document. PRIV 28–29 and PRIV 30–49 must be produced to Plaintiffs.

PRIV 50–52 is a memo from Karen Coffey, TADA Chief Counsel, to Gene Fondren TADA President, Tom Blanton, TADA Vice President, and Bill Wolters, TADA Vice President. Defendants assert the attorney-client privilege, work-product doctrine and joint defense privilege for this document. The memo consists of discussion of legal issues and analysis of statutes and case law. This document is a communication made in the context of legal services between clients and their in-house counsel and would be protected by the attorney-client privilege (or possibly the joint defense privilege) but for Defendants' failure to establish that this document was kept confidential.

Defendants have also failed to carry their burden of showing that this document is protected by the work-product doctrine. Defendants assert only that this document was "prepared in April of 1997, long after the first VIT lawsuit was filed against TADA Dealer Defendants." Defs.' Resp. to Pls.' Mot. to Compel at 7. As noted above, establishing that a document was prepared after litigation was commenced is insufficient to prove that the document was prepared in anticipation of litigation. Defendants have not told the court how this document was prepared to aid in the VIT lawsuits, and the answer is not apparent from reading the document. This document must be produced to Plaintiffs.

PRIV 53 is a transmittal letter from Bill Wolters to Jim Popp, outside counsel for TADA, referring to an attachment labeled PRIV 54, which has already been produced to Plaintiffs. PRIV 55 is a transmittal letter from Pat Gullatt, a legal assistant with Popp & Ikard, outside counsel for TADA, to Karen Coffey, TADA Chief Counsel. PRIV 56 is a fax cover sheet transmitting a document labeled PRIV 57–58, which has already been produced to Plaintiffs. Defendants assert the attorney-client privilege for these documents. Transmittal letters or acknowledgment of receipt letters are not privileged unless they reveal the substance of a privileged communication. *See Hercules, Inc. v. Exxon Corp.,* 434 F.Supp. 136, 144–45 (D.Del.1977); *LGS Natural Gas Co. v. McFarland Energy, Inc.,* No. Civ. A. 96–3163, 1997 WL 96376, at *1 (E.D.La. March 5, 1997). These transmittal documents do not appear to reveal the substance of privileged communications and Defendants have not explained how these letters might do so. For that reason and because Defendants have failed to establish that these documents were kept confidential, PRIV 53, 55, and 56 must be produced to Plaintiffs.

PRIV 59–61 is a fax cover sheet with an attached memo to Karen Coffey from Jim Popp, outside counsel for TADA. Defendants assert the attorney-client privilege for these documents. The cover sheet, PRIV 59, is not privileged for the same reasons given for PRIV 53, 55, and 56. PRIV 60–61 is a memo regarding taxes. The memo is a communication from TADA's outside counsel to TADA's in-house counsel made in the context of providing legal services to TADA. It would be privileged but for Defendants failure to establish that it was kept confidential. PRIV 59–61 must be produced to Plaintiffs.

PRIV 63 is a transmittal memo from Bill Wolters to Gene Fondren, Karen Coffey, and Tom Blanton, transmitting PRIV 64–66, which is a letter that has already been produced to Plaintiffs. PRIV 71 is a transmittal letter from Bill Wolters to Gene Fondren, Tom Blanton, and Karen Coffey transmitting PRIV 72–74, which is a letter that has already been produced to Plaintiffs. Defendants assert the attorney-client privilege for the transmittal letters. These transmittal letters do not appear to reveal the substance of privileged communications and Defendants have not explained how the letters might do so. For that reason and because Defendants have failed to establish that these documents were kept confidential, PRIV 63 and PRIV 71 must be produced to Plaintiffs.

PRIV 75 is a memo from Michelle Fontana to Gene Fondren, Karen Coffey, and Tom Blanton. Fontana is under the supervision and control of Karen Coffey and is authorized to receive legal advice from William

Kilgarlin, outside counsel for TADA, and relay it to Coffey and the other TADA officers. Defendants assert the attorney-client privilege for this memo. The memo communicates a message from William Kilgarlin regarding legal advice and would be protected by the attorney-client privilege but for Defendants' failure to establish that it was kept confidential. This document must be produced to Plaintiffs.

 Communications between an attorney's agent and the attorney's client can be protected by the privilege when the communication is made in confidence for the purpose of facilitating the rendition of legal services. *See United States v. White*, 617 F.2d 1131, 1135 (5th Cir.1980) (noting that "[i]n appropriate circumstances the privilege may bar disclosures made by a client to non-lawyers who ... ha[ve] been employed as agents of an attorney.") (quoting *Pipkins*, 528 F.2d at 562) (alterations in original).

> [F]ew lawyers could now practice without the assistance of secretaries, file clerks, telephone operators, messengers, clerks not yet admitted to the bar, and aides of other sorts. "The assistance of these agents being indispensable to his work and the communications of the client being often necessarily committed to them by the attorney or by the client himself, the privilege must include all the persons who act as the attorney's agents."

*United States v. Kovel*, 296 F.2d 918, 921 (2d Cir.1961) (quoting 8 Wigmore, Evidence, § 2301 Annot., 53 A.L.R. 369 (1928)). Because Defendants have failed to establish confidentiality, this document must be produced to Plaintiffs.

PRIV 98–128 consists of various drafts of a letter and attachments from William Kilgarlin, outside Counsel for TADA, to Tom Blanton, concerning analysis of a statute. Defendants assert the attorney-client privilege for these documents. These documents are communications of legal advice from attorney to client and would protected by the attorney-client privilege but for Defendants' failure to establish that these documents were kept confidential. These documents must be produced to Plaintiffs.

## B. Communications Between TADA Counsel and TADA Members

 Several of the documents on Defendants' privilege log are communications between Karen Coffey, TADA Chief Counsel, and TADA members. Plaintiffs argue that communications from Coffey to TADA members are not protected by the attorney-client privilege because Defendants have failed to prove either that there was an attorney-client relationship between Coffey and TADA members or that the communications sent to TADA members were kept confidential.

 To invoke the attorney-client privilege, Defendants must show that the asserted holders of the privilege, here the members of the TADA, were or sought to become clients at the time the allegedly privileged communication was made. *See Mobil*, 149 F.R.D. at 536. The Fifth Circuit has not addressed whether a trade association's members are necessarily clients of the association's lawyer and, thus, are permitted to invoke the protections of the attorney-client privilege for communications with the association's lawyer. Defendants cite cases from other circuits that support such a rule. *See Philadelphia Hous. Auth.*, 294 F.Supp. at 1150 (holding that each individual member of an unincorporated association is a client of the association's lawyer) (citing *United States v. American Radiator & Standard San. Corp.*, 278 F.Supp. 608 (W.D.Pa.1967); *Schwartz v. Broadcast Music, Inc.*, 16 F.R.D. 31 (D.C.N.Y.1954)). However, Defendants have cited no binding precedent supporting such a rule. The court believes that such a blanket rule does not adequately consider the variability in the character of trade associations and their relationships with their members. The existence of the privilege is " 'a question of fact to be determined in the light of the purpose of the privilege and guided by judicial precedents.' " *In re Auclair*, 961 F.2d at 68 (quoting *Hodges, Grant & Kaufmann*, 768 F.2d at 721). The court believes that the purpose of the attorney-client privilege is better served when the question of whether an association member was or sought to become a client at the time of communication is decided on a "case-by-case basis, employing the usual concepts of attor-

ney-client privilege." *Harper–Wyman Co. v. Connecticut General Life Ins. Co.*, No. 86 C 9595, 1991 WL 62510, at *5 (N.D.Ill. April 17, 1991); *see also In re Brand Name Prescription Drugs Antitrust Litig.*, 94 C 897 MDL 997, 1995 WL 663684, at *4, 1995 U.S. Dist. LEXIS 16523, at *17 (N.D.Ill. Nov. 3, 1995). This is also consistent with the Supreme Court's holding in *Upjohn* where the Court declined to adopt a specific test for determining whether communications between attorneys and corporate agents are privileged, instead, requiring a case by case determination of whether application of the privilege would further the underlying purpose of the privilege. *See Upjohn*, 449 U.S. at 396–97, 101 S.Ct. 677. Accordingly, while members of a trade association may certainly establish an attorney-client relationship with the trade association's attorney(s), it must be determined on a case-by-case basis whether those members actually took the necessary action to do so.

As discussed at some length earlier, Defendants must also show that the privileged communications not only were intended to be kept confidential, but that they were, in fact, kept confidential. Defendants assert that communications between Coffey and TADA members are protected by the attorney-client privilege so long as they "[were] intended to remain confidential and [were] made under such circumstances that [they were] reasonably expected and understood to be confidential." Defs.' Resp. to Pls.' Mot. to Compel and Br. in Support at 4. As noted earlier, Defendants' assertion misstates the law.

PRIV 129–135, 139–144, 155–156, 160–163, 190–194, 208, 229, 242, and 248–249 are correspondence from Karen Coffey (and in some cases, Gene Fondren as well), to TADA members discussing pending litigation that had been filed against some automobile dealers. Defendants assert the attorney-client privilege, work-product protection and joint defense privilege for these documents.

These documents clearly qualify for the attorney-client privilege from a subject matter standpoint. Comments on pending litigation epitomize the type of legal communication that is protected by the attorney-client privilege. However, Defendants have failed to carry their burden of demonstrating all elements of the attorney-client privilege.

Defendants have failed to demonstrate that all TADA members were or sought to become Karen Coffey's clients at the time these communications were made, between June 15, 1995 and April 8, 1998. The evidence submitted by Defendants in support of the privilege shows: 1) that Coffey sent TADA members these communications updating members on litigation of which they may or may not have been a part; 2) that Coffey herself believes that all TADA members considered her to be their attorney; and 3) that some of the members of TADA considered her to be their attorney since the VIT litigation commenced or, in some cases, for several years prior to that date.

The act of sending TADA members communications about legal matters and the fact that Coffey believes that all TADA members consider her to be their attorney are facially insufficient to establish the existence of an attorney-client relationship. Defendants have also submitted deposition testimony of four TADA members indicating that they considered Coffey their attorney. Such testimony could theoretically be sufficient to establish the requisite relationship for those members who so testified. But those members were vague as to the date when the relationship was created and did not testify that it was in existence at the time these communications were made. Moreover, the testimony of these four members is not sufficient to establish an attorney-client relationship between Coffey and the other TADA members who received these communications.

Perhaps there exists some evidence of an actual or sought after attorney-client relationship between all TADA members and Karen Coffey at the time these communications were made. Examples of the type of evidence that might satisfy that burden would include a provision in the TADA membership agreement or other literature which indicates that membership in TADA creates an attorney-client relationship, discussions between Coffey and TADA members regarding the creation of such a relationship, or written agreements such as engagement or authorization letters signed by individual TADA members. But Defendants have not

introduced any such evidence to establish, as they must, that each TADA member who received these communications was Coffey's client or sought to become her client at the time the communication occurred.

On the contrary, there is evidence in the documents themselves that shows that many of the recipients had, at the time the communications were sent, failed to return a requested "authorization" to be represented by TADA and failed to make requested contributions to the TADA Legal Defense Fund. Plaintiffs have also submitted excerpts from Coffey's October 7, 1999 deposition where she indicates that she mailed letters to TADA members attempting to "confirm" an attorney-client relationship in the summer of 1999, well after PRIV 129–163 were sent to all TADA members. *See* Pls.' Reply in Support of Pls.' Mot. to Compel at 9. The effect, if any, of such an after the fact "confirmation," would seem to be to create, rather than confirm, an attorney-client relationship. Absent some showing that all TADA members intended to make Karen Coffey their attorney, other than joining the TADA and receiving mailings, Defendants have failed to carry their burden of establishing that all TADA members were Coffey's clients. Disclosure to non-clients breaks the confidentiality of the attorney-client relationship and waives the attorney-client privilege as to these documents. Therefore, these documents would be protected by the attorney-client privilege only if Defendants could establish that the joint defense privilege applies.

 To establish that these documents are protected by the joint defense privilege, Defendants must establish that the communications would qualify for the attorney-client privilege but for disclosure to persons with a common legal interest and that those communications were kept confidential by the persons to whom they were distributed. To satisfy these elements, there must first have been an attorney-client relationship (or a sought after relationship) between Karen Coffey and at least one person who received this communication.[14] If an initial attorney-client relationship exists, the joint defense privilege will apply if the communication is disclosed by either the attorney or the client, and the communication is disclosed *only* to persons with a common legal interest or their attorneys. *See LTV*, 89 F.R.D. at 604 (stating that the joint defense privilege preserves the attorney-client privilege despite "disclosure of privileged information by an attorney to actual or potential co-defendants, or to their counsel...."); *Aiken*, 151 F.R.D. at 624 (stating that the joint defense privilege "encompasses shared communications between various co-defendants, actual or potential, and their attorneys....").

In the present case, Defendants have established that Karen Coffey was acting as an attorney for the TADA when she sent these communications to TADA and its members. As noted earlier, the subject matter of these communications qualifies them for the attorney-client privilege. Thus, the attorney-client privilege could have directly protected these documents had they only been exchanged between Coffey and TADA. And all members of TADA clearly shared a common legal interest in keeping abreast of developments in litigation against other auto dealers.

However, regardless of whether the necessary elements of the attorney-client privilege and/or the joint defense privilege were otherwise present at the time these communications were sent, Defendants have failed to establish that these documents were kept confidential by the TADA members who received them, as is required to establish either the attorney-client privilege or the joint defense privilege. *See Mobil*, 149 F.R.D. at 536; (regarding the attorney-client privilege); *In re LTV Sec. Litig.*, 89 F.R.D. at 604 (regarding the joint defense privilege). On the contrary, Defendants have made no ef-

---

**14.** The joint defense privilege is not a stand alone privilege, but merely an extension of the attorney-client privilege. *See In re Auclair,* 961 F.2d at 69 (joint defense privilege merely preserves the attorney-client privilege against waiver); *LTV, 89* F.R.D. at 604 (joint defense privilege merely "extends the attorney-client privilege...."). Thus, the joint defense privilege applies only to communications that would be pro-

tected by the attorney-client privilege but for their having been shared with parties with a common legal interest. In other words, although non-represented parties can be privy to a communication without destroying the joint defense privilege, the joint defense privilege cannot exist without the presence of least one attorney-client relationship.

fort to show that these documents were kept confidential by the TADA members who received them, choosing to rely instead on their assertions that 1) it is legally sufficient if the communications were intended to be kept confidential, and 2) that Plaintiffs' have not provided any evidence of waiver. The court has already dispensed with the first proposition in detail. The second proposition is likewise unavailing.

■ Defendants bear the burden to show confidentiality and absence of waiver as these are essential elements of the attorney-client privilege and joint defense privilege. *See In re Grand Jury Proceedings*, 680 F.2d at 1029; *Miller*, 660 F.2d at 570–71; *Mobil*, 149 F.R.D. at 536; *LTV*, 89 F.R.D. at 604. These documents were evidently mass mailed to each of approximately 700 members of TADA. When documents are given such wide distribution, the distributees are the only persons with knowledge sufficient to attest to whether confidentiality was maintained. *See* Paul R. Rice, *supra* § 11.6, at 58–62. Defendants provided no affidavits from the recipients of these communications establishing the factual basis for preservation of the privilege. In a situation like the present one, the affiants would need, at the least, to provide the name of every person who had been privy to the communication or with whom the communication had been discussed, establish that each such person had a relationship with the co-defendant recipient such that waiver had not occurred, and affirm that they understood at the time that the communications were intended to be confidential. Although that may seem like a burdensome practice to suggest, it is not disproportionately burdensome given that Defendants seek the protection of the attorney-client privilege and joint defense privilege for documents that were mass-mailed or faxed to several hundred TADA members. Defendants chose to assert the privilege for these documents and therefore will not be relieved of their duty to provide this information merely because "tracking down the requested information will be unduly burdensome." *Board of Educ. of Evanston Tp. High School Dist. No. 202, Cook County, Ill. v. Admiral Heating and Ventilating, Inc.*, 104 F.R.D. 23, 34 (N.D.Ill. 1984). Furthermore, even if Defendants had submitted such affidavits, they would likely be insufficient to establish confidentiality in the present case because nothing on the face of the documents indicates that they were intended to be kept confidential. They are not marked as "confidential," "attorney-client communication," or the like, as are other documents that obviously were intended to be so protected at the time they were written. On the contrary, the fact that these documents were sent to several hundred recipients militates strongly against a finding of intended or actual confidentiality. Because Defendants have failed to establish that TADA members were or sought to become Karen Coffey's clients, or that communications from Coffey to TADA members were intended to be or were kept confidential, these documents are not protected by the attorney-client privilege directly or by extension through the joint defense privilege.

■ TADA has satisfied its burden of establishing that the work-product protection applies to PRIV 129–135, 139–144, 155–156, 160–163, 190–194, 208, 229, 242, and 248–249. In camera examination of the documents reveals that they were created by Karen Coffey acting as attorney for TADA, which was a party to the instant litigation, and that the documents discuss litigation that was ongoing at the time they were created. These documents were clearly created in anticipation of possible similar litigation against TADA and its members and include Coffey's mental impressions, which constitute opinion work-product. In contrast to the attorney-client privilege, Defendants' failure to establish that these documents were kept confidential does not destroy the work-product protection. The work-product protection is not waived unless work-product is disclosed to *adversaries* or treated in a manner that substantially increases the likelihood that an adversary will come into possession of the material. *See High Tech Communications*, 1995 WL 83614, at *5; *Aiken*, 151 F.R.D. at 623 n. 2. Here, the documents were distributed to TADA members, who are not adversaries and share a common legal interest with TADA regarding the subject matter of these communications. "The party asserting waiver has the burden of proving facts necessary to support that finding," *High Tech Communications*, 1995 WL 83614, at *5, and Plain-

tiffs have not introduced evidence that TADA or Coffey disclosed this information in a manner that would cause it to fall into the hands of an adversary. Because these documents constitute opinion work-product, Defendants are not required to produce these documents to Plaintiffs unless Plaintiffs show not only substantial need and undue hardship, but a more compelling reason why the court should require production.

PRIV 136–138, 145–146, 150–154,157–159, 230–231, 240–241 are memos and attachments from Karen Coffey, TADA Chief Counsel (and in some cases Gene Fondren, TADA President, as well) to TADA members informing them of litigation and requesting that the recipients respond by returning the attached authorizations for legal representation, or waivers of service. Defendants assert the attorney-client privilege, work-product protection and joint defense privilege for these documents, but have failed to establish that any of these protections apply. Defendants have failed to show that these are anything more than invitations to potential clients to employ an attorney's services or requests to provide information to aid in the defense of TADA and the TADA members who had authorized TADA to represent them.

PRIV 164–172 and 178–179 are not at issue because they were not requested in Plaintiffs' motion to compel.

## C. COMMUNICATIONS REGARDING THE TADA LEGAL DEFENSE FUND

PRIV 180–189, 195–198, 204–207, 215–228, 234–239, 243–247, and 250–251 are letters from Jack Coker, Chairman of the TADA Legal Defense Fund, who owns Coker Buick Company, which is a member of TADA. The letters are to TADA members asking them to send in contributions to the TADA Legal Defense Fund and informing them of some of the cases where those funds were then being spent. Defendants assert the attorney-client privilege, work-product protection and joint defense privilege for these documents. Jack Coker is not an attorney. Defendants base their assertions of privilege and protection on their claims that Coker is communicating on behalf of Karen Coffey, and that Coker is acting as the representative of Coker Buick, a dealer defendant in the VIT lawsuits.

If Coker was acting under the direction of Coffey, his communications could be treated as though they had come from her for purposes of the attorney-client privilege. The attorney-client privilege extends to an attorney's agents when the communication is made in confidence for the purpose of facilitating the rendition of legal services. See White, 617 F.2d at 1135; Pipkins, 528 F.2d at 562; Kovel, 296 F.2d at 921. Coffey's affidavit states that she "reviewed" these communications before they were sent out and that Coker's activities are "subject to the advice and recommendation of the TADA Board of Directors and the TADA legal department." Coffey Aff. at 4. Coffey also filed a supplemental affidavit stating that she "assisted the Chairman of the Legal Defense Fund in drafting and revising the memoranda." Defs.' Surreply in Further Resp. to Pls.' Mot. to Compel and Br. in Support, Ex. A, (Coffey Supp. Aff.) at 2. Even assuming that these facts are sufficient to treat Coker's communications as attorney communications, the other elements of the privilege have not been demonstrated. As noted earlier, Defendants have failed to establish that there was an attorney-client relationship between Coffey and members of the TADA who received these communications at the time the communications were made. And the joint defense privilege does not compensate for that deficiency because Defendants have failed to establish that the recipients kept these communications confidential. Moreover, these communications do not contain legal discussion or reveal legal strategies as Defendants contend, but merely solicit money and tell the recipients how the money will be spent. Thus, the subject matter of these communications is not within the boundaries of the attorney-client privilege. Neither the attorney-client privilege nor the joint defense privilege apply to these documents.

██ Neither are these documents protected by the work-product doctrine. These documents were prepared "in anticipation of litigation" only under an overly broad interpretation of that phrase. There is no substantive legal matter in these letters. Their content and purpose are strictly related to fund-raising, albeit, fund-raising in anticipation of having to pay for litigation. That

purpose is unrelated to the core purpose of work-product protection, which is to insulate material prepared "in the course of . . . legal duties," *Hickman,* 329 U.S. at 510, 67 S.Ct. 385, not to protect communications related to payment of legal fees. What is important is that "the primary motivating purpose behind the creation of the document was to aid in possible future litigation.'" *El Paso,* 682 F.2d at 542. While these letters solicit funds that pay for and, in a sense, "aid in" future litigation, it stretches the meaning of the phrase to say that fund-raising letters are created "to aid in possible future litigation" within the meaning of the rule. They do not aid in litigation in any substantive legal way and thus fall outside the scope of the protection. These documents must be produced to Plaintiffs.

■ PRIV 199–203 is a memo from William Ikard, outside counsel for TADA, and Karen Coffey, to "Defendant Automobile Dealer Clients" communicating discovery requests in *Jones v. Alford Chevrolet–Geo, Inc.,* and giving instructions on responding to the discovery requests. Defendants assert the attorney-client privilege, joint defense privilege, and work-product protection for this document. Each page of the document is stamped "Privileged and Confidential Attorney Work Product." The memo is only addressed to "clients," not all TADA members. However, the privilege log says it was sent to "TADA Dealers," and Defendants included these document numbers in the sections of their written submissions that discuss documents that were sent to all TADA members. Defendants' vague and seemingly conflicting statements regarding exactly who received these documents, combined with their general failure to demonstrate that these documents were kept confidential by the recipients, precludes application of the attorney-client and joint defense privileges. These documents would clearly be protected by the work-product doctrine but for the failure to establish who received them. The documents must be produced to Plaintiffs.

PRIV 232–233 is attached to PRIV 230–231 and appears to be an index of some sort that is not referred to in PRIV 230–231. Defendants assert the attorney-client privilege, work-product protection and joint defense privilege for this document. Defen-

dants have not explained the nature of this document and the court cannot discern it. Defendants have failed to meet their burden of proof regarding this document and it must be produced to Plaintiffs.

■ PRIV 252–277 were not listed in Defendants' original privilege log. "[T]he TADA has added [these] documents to the Privilege Log," apparently since Plaintiffs' motion to compel was filed. Coffey Affidavit at 5. A party waives the attorney-client privilege, joint defense privilege and work-product protection when the party fails to give notice in its privilege log that a document is being withheld based on a privilege or protection as required under Federal Rule of Civil Procedure 26(b)(5). *See Nance v. Thompson Medical Co.,* 173 F.R.D. 178, 182 (E.D.Tex.1997) (citing Fed.R.Civ.P. 26(b)(5), advisory committee note (1993 amend.) ("A party must notify other parties if it is withholding materials otherwise subject to disclosure under the rule or pursuant to a discovery request because it is asserting a claim of privilege or work-product protection. To withhold materials without such notice is contrary to the rule . . . and may be viewed as a waiver of the privilege or protection."); *Mackey v. IBP, Inc.,* 167 F.R.D. 186 (D.Kan. 1996)). While waiver based on such conduct may seem like a harsh penalty, such a policy is necessary to prevent gamesmanship. If a party is allowed to withhold documents without giving opposing parties notice that the documents exist but are being withheld, the opposing party will obviously be unable to contest the validity of a privilege or protection asserted for those documents. Amending the privilege log to fully disclose the scope of withheld documents after a motion to compel documents in the privilege log has already been filed is too late to serve that purpose. If the existence of all the documents that would be most enticing to the opposing party is not known, no motion to compel may ever be filed. Therefore, PRIV 252–277 must be produced to the Plaintiffs.

### D. REDACTED MINUTES AND BRIEFS FROM TADA BOARD MEETINGS AND EXECUTIVE COMMITTEE MEETINGS

TADA 3592, 3599, 3605, 3622, 3635, 3659, and 3689 are TADA "Board Briefs" which

are summaries of TADA activities that are sent to the individual Directors on the TADA Board of Directors. Defendants assert the attorney-client privilege, work-product protection and joint defense privilege for the portions of these documents designated "LEGAL." Karen Coffey provides the information in the legal section of these briefs. Defendants have established that the "LEGAL" sections of these briefs constitute communications from an attorney to her client's representatives, the TADA Directors. But Defendants have not otherwise satisfied the requirements for the attorney-client privilege.

As is true of every document discussed in this opinion, Defendants have failed to even assert that these briefs were kept confidential between TADA and Coffey. Furthermore, from a subject matter standpoint, none of the material outside the "LEGAL" section of these documents is privileged. And although some of the information in the "LEGAL" section appears to concern legal services, much of it clearly involves mere business, lobbying or financial issues. Even if all the other elements of the privilege were to be demonstrated, the court would find that Defendants have failed to establish that the following portions of these documents satisfy the subject matter requirements for the privilege:

TADA 3592—in its entirety
TADA 3599—bullet one
TADA 3605—bullets two, three, and four
TADA 3635—in its entirety
TADA 3659—bullet two
TADA 3689—bullet three

Defendants have failed to provide any support or explanation for their assertions of the work-product protection or joint defense privilege. These documents must be produced to Plaintiffs.

### E. TELEPHONE RECORDS

Plaintiffs ask the court to compel TADA to provide consent for the release of the telephone records for a fax machine number that it used during the months of November and December 1996. Plaintiffs believe that such records may lead to discovery of relevant evidence about TADA's communications to dealers regarding the vehicle inventory tax.

TADA responds that it is not opposed to providing such consent but requests that Plaintiffs bear the expense of the production of such records. Both parties contemplate that the records will be provided directly to the court, which will review the records in camera to determine whether they should be produced.

TADA is ORDERED to provide the necessary consent for the telephone company to produce these records to TADA. TADA is further ORDERED to review these records and produce them to Plaintiffs or follow the normal procedure for withholding documents and asserting privileges or work-product protection. Plaintiffs are ORDERED to bear any costs charged by the telephone company for providing the records because Defendants should not, under these circumstances, be required to pay for the production of a document not in their possession. The court does not wish to be provided these records and will not review these records unless TADA, after reviewing the records, asserts privileges or work-product protection over the documents and such assertions are challenged.

### IV. CONCLUSION

Defendants are ORDERED to produce to Plaintiffs the documents indicated by the court in this opinion within 20 days from the date of this order. In any future filings related to privileges or work-product protection in this case, the parties are ORDERED to submit, for in camera inspection, separate affidavits for each withheld item establishing each element of the privilege or protection for each item.