Opinion issued November 7, 2014



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-14-00704-CV

————————————

## IN RE BAYTOWN NISSAN INC., BURKLEIN FAMILY LIMITED PARTNERSHIP, FREDERICK W. BURKLEIN AND J. CARY GRAY, Relators

---

### Original Proceeding on Petition for Writ of Mandamus

---

### O P I N I O N

In this mandamus proceeding, we examine whether a discussion between two lawyers—one representing a trade association and the other representing one of its members—is subject to an attorney-client or attorney-work-product privilege. Relators Baytown Nissan, Inc., the Burklein Family Limited Partnership

and Frederick W. Burklein (collectively, "Baytown Nissan") are defendants in an action alleging breach of contract and various torts arising from a failed sale of their Nissan dealership to, BSAG, Inc. Baytown Nissan and their legal counsel, J. Cary Gray, seek mandamus relief from the trial court's order overruling their privilege assertions to the substance of a June 2013 phone conversation between Gray and Brenda Karen Phillips, the General Counsel of the Texas Automobile Dealer Association, regarding the dealership sale. The order requires that both Gray and Phillips answer additional questions about the substance of the conversation, for which Baytown Nissan has claimed privilege. We conditionally grant relief as to Gray's deposition and deny it as to Philips's.[1]

## Background

Baytown Nissan entered into an agreement to sell the assets and the associated real estate of their Nissan dealership to BSAG, Inc. Pursuant to the agreement's terms, the dealership's sale was subject to the written approval of Nissan North America, Inc., which also holds a right of first refusal for the sale of the dealership. Nissan North America never gave its written approval, and it

---

[1] The underlying case is *BSAG, Inc. and Bob Stallings Nissan of Baytown, Inc. v. Baytown Nissan, Inc., Burklein Family Limited Partnership, Nissan North America, Inc., and Frederick W. Burklein*, cause number 2013-38072, pending in the 127th District Court of Harris County, Texas, the Honorable R.K. Sandill presiding.

exercised its right of first refusal; thus, the dealership sale to BSAG failed to close. Baytown Nissan then agreed to sell the dealership to a third party, who Nissan North American had approved. BSAG and its assignee under the agreement, Bob Stallings Nissan of Baytown, Inc. (collectively "BSAG") have sued the Baytown Nissan defendants and Nissan North America, seeking damages associated with the failed transaction.

## A. The Failed Sale Transaction and Right of First Refusal

In 1989, Nissan North America entered into a sales and service agreement with Baytown Nissan. Pursuant to the agreement, Baytown Nissan became an authorized Nissan dealer in Baytown, Texas. In 2005, the parties amended the agreement to add, among other things, a right of first refusal ("ROFR") allowing Nissan North America to match any dealership purchase offer and to step into the shoes of a potential buyer.

In March 2013, BSAG offered to purchase the Baytown Nissan dealership from Baytown Nissan through an asset purchase agreement. In April, Baytown Nissan notified Nissan North America of the proposed sale. In June, Nissan North America notified Baytown Nissan that it was exercising its ROFR. Nissan North America subsequently assigned its rights to purchase Baytown Nissan to Soni

Insurgentes, S.A. de C.V. By the end of June, BSAG had filed the underlying lawsuit, and it moved to enjoin the sale to Soni. In August, the trial court denied injunctive relief. This original proceeding, as well as two others relating to trade secret issues, arose during the discovery process. After a failed settlement attempt (prompting the parties to amend their pleadings to assert additional claims), the case is set for trial next week.

## B. The Gray-Phillips Conversation

Before it exercised its ROFR, Nissan North America notified Baytown Nissan that it was considering invoking it. At the time, Baytown Nissan was a member of the Texas Automobile Dealer Association ("TADA"). In response to the notice, Baytown Nissan's lawyer, Gray, telephoned TADA's General Counsel, Phillips, to discuss the transaction. During the discovery process in this suit, BSAG advised Baytown Nissan that it intended to (1) depose Gray regarding the substance of the Gray-Phillips Conversation and (2) call Philips as a witness at trial to testify against Baytown Nissan regarding their conversation.

### 1. The Gray Deposition

Baytown Nissan moved to quash Gray's deposition, arguing that Gray's conversation with Phillips is privileged. The trial court ordered that Gray be

deposed in the courtroom so that the court could rule on the privilege assertions in real time. At Gray's deposition, Gray's counsel asserted privilege and instructed Gray not to answer questions about the substance of the Gray-Phillips Conversation. The trial court was present for nine of these questions; it overruled the assertions of privilege and instructed Gray to answer within ten days. BSAG then posed the following two additional questions, which also evoked privilege objections and instructions not to answer:

> Q: Okay. And as somebody with experience in the automobile dealership business, what she told you was consistent with your experience, wasn't it? (the "First Additional Question")

> Q: All right. What did you and Ms. Phillips talk about? Tell me from the beginning of the conversation to the end of it. (the "Second Additional Question")

The trial court thereafter entered a written order (1) overruling Gray's objections and assertions of privilege as to the nine original questions and the First Additional Question and (2) sustaining the objection to the Second Additional Question. The order compelled Gray to answer the deposition questions to which objections and instructions not to answer were overruled. Gray then provided sworn answers to the original questions and the First Additional Question. BSAG subsequently moved the court to reconsider its ruling sustaining the privilege objection to the Second Additional Question.

5

## 2. *The Phillips Deposition*

During Phillips's deposition, Baytown Nissan's counsel similarly objected to questions regarding the substance of the Gray-Phillips Conversation on the basis of attorney-client privilege and instructed Phillips not to answer. The parties contacted the trial court for a ruling. The trial court overruled Baytown Nissan's objections, but directed that Phillips not provide answers until ten days after the court entered a written signed order to allow for further review.

## C. The Order

On August 12, 2014, the trial court entered a written order, ruling that the substance of the Gray-Phillips Conversation is not privileged and ordering both Gray and Phillips to be re-deposed. The trial court also granted BSAG's motion for reconsideration of its July 8, 2014 ruling and ordered Gray to answer Second Additional Question.

## Discussion

Baytown Nissan seeks mandamus relief, requesting that we vacate the August 12, 2014 order, contending that the Gray-Phillips Conversation is subject to one or more privileges or exemptions from discovery.

*Standard of Review*

Mandamus relief is available to correct a clear abuse of discretion when there is no adequate remedy by appeal. *See Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding). Generally, the scope of discovery is within the trial court's discretion. *See In re Colonial Pipeline Co.,* 968 S.W.2d 938, 941 (Tex. 1998) (orig. proceeding) (citing *Dillard Dep't Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex. 1995) (orig. proceeding)). The burden of establishing a clear abuse of discretion is on the party resisting discovery. *See In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding) (citing *Canadian Helicopters Ltd. v. Wittig*, 876 S.W.2d 304, 305 (Tex. 1994) (orig. proceeding)). But a trial court has no discretion in determining what the law is or in applying the law to the particular facts. *See Walker*, 827 S.W.2d at 840.

In particular, mandamus relief is appropriate to protect confidential and privileged information from discovery. *See In re Living Ctrs. of Tex., Inc.*, 175 S.W.3d 253, 256 (Tex. 2005) (orig. proceeding); *Mem'l Hosp.–The Woodlands v. McCown*, 927 S.W.2d 1, 12 (Tex. 1996). An appeal is inadequate when a trial court erroneously orders the production of confidential information or privileged documents. *See In re Ford Motor Co.*, 211 S.W.3d 295, 298 (Tex. 2006); *In re E.I.*

7

*DuPont de Nemours and Co.*, 136 S.W.3d 218, 223 (Tex. 2004); *see also In re BP Prods. N. Am. Inc.*, 263 S.W.3d 106, 111 (Tex. App.—Houston [1st Dist.] 2006, orig. proceeding) ("There is not an adequate remedy by appeal when a trial court erroneously orders the disclosure of privileged information because the error cannot be corrected once the benefit of the privilege is lost.").

To properly assert a claim of privilege, a party must plead the particular privilege, produce evidence to support the privilege through affidavits or testimony, and produce the documents for an in camera inspection, if the trial court determines review is necessary. *See In re ExxonMobil Corp.*, 97 S.W.3d 353, 357 (Tex. App.—Houston [14th Dist.] 2003, orig. proceeding). The burden to establish the privilege is on the party seeking to shield information from discovery, and the party has the obligation to prove, by competent evidence, that the privilege applies to the information sought. *See Arlington Mem'l Hosp. Found., Inc. v. Barton*, 952 S.W.2d 927, 929 (Tex. App.—Fort Worth 1997, orig. proceeding).

**A.       Attorney-Client Privilege**

Texas Rule of Evidence 503 provides that a client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client. *See* TEX. R. EVID. 503(b)(1).

The attorney-client relationship is a contractual relationship whereby an attorney agrees to render professional services for a client. *See Mellon Serv. Co. v. Touche Ross & Co.,* 17 S.W.3d 432, 437 (Tex. App.—Houston [1st Dist.] 2000, no pet.). Parties may expressly create such a relationship by contract, or it may be implied from their actions. *See Sutton v. Estate of McCormick*, 47 S.W.3d 179, 182 (Tex. App.—Corpus Christi 2001, no pet.); *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 405 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.).

Baytown Nissan argues that the Gray-Phillips Conversation is privileged under Rule 503 because (1) the rule does not require an attorney-client relationship between two attorneys for it to apply; and (2) in any event, an attorney-client relationship was implied under these facts.

*1.  Rule 503's Requirement of an Attorney-Client Relationship*

Rule 503 recognizes a privilege for confidential communications when a lawyer either (1) renders professional legal services to a client or (2) consults with

a client who seeks professional legal services from that lawyer. *See* TEX. R. EVID. 503(a)(1), (b)(1). Baytown Nissan's first argument, that Phillips's status as an attorney—and not necessarily *their* attorney—is sufficient to attach attorney-client privilege disregards the purpose of the privilege: to foster open communication between clients and their attorneys so that the attorneys can best represent their clients. *See In re Union Carbide Corp.*, 2003 WL 22682301, *4 (Tex. App.— Houston [1st Dist.] 2003, orig. proceeding) ("The purpose of the attorney-client privilege is to protect the confidential relationship between attorney and client and to promote full and open disclosure of facts so that the attorney can best represent his client."). It is the relationship with the client that confers the privilege. Accordingly, we reject Baytown Nissan's request to expand the attorney-client privilege to situations outside of an attorney-client relationship. *See* TEX. R. EVID. 503(b).

### 2. Implied Attorney-Client Relationship

It is undisputed by the parties that there was no express agreement forming an attorney-client relationship between Phillips and Baytown Nissan. Baytown Nissan instead argues that an attorney-client relationship existed because Phillips is an attorney who provides legal services to TADA's membership and thus, as a member of TADA, Baytown Nissan numbers among her clients.

In the absence of an express agreement, an attorney-client relationship can be implied from the actions of the parties. *See Span Enters., Inc. v. Wood*, 274 S.W.3d 854, 858 (Tex. App.—Houston [1st Dist.] 2008, no pet.). Whether an attorney-client relationship can be implied depends upon an objective standard, looking at what the parties said and did to support an agreement to enter into one. *See Span Enters.*, 274 S.W.3d at 858; *Vinson & Elkins*, 946 S.W.2d at 405–06. A court cannot consider a client's or attorney's unspoken subjective beliefs about the parties' relationship. *See Id.*

A federal district court rejected Baytown Nissan's position in *Robinson v. Tex. Auto. Dealers Ass'n*, 214 F.R.D. 432 (E.D. Tex. 2003), *vacated in part on other grounds*, *In re Tex. Auto. Dealers Ass'n*, No. 03-40860, 2003 WL 21911333 (5th Cir. July 25, 2003). In *Robinson*, the plaintiffs moved to compel production of documents on a privilege log served by defendants that included communications between Phillips, on behalf of TADA, and individual members. The district court concluded that the communications between Phillips and TADA members were not per se protected by attorney-client privilege. The court observed that "[t]o invoke the attorney-client privilege, Defendants must show that the asserted holders of the privilege, here the members of the TADA, were or sought to become

11

clients at the time the allegedly privileged communication was made." *Id*. at 451.

In rejecting a blanket rule that communications between a trade association's attorney and the association's members are covered by an attorney-client privilege, the court held that "while members of a trade association may certainly establish an attorney-client relationship with the trade association's attorney(s), it must be determined on a case-by-case basis whether those members actually took the necessary action to do so." *Id*. at 452.

We similarly decline to adopt a blanket rule of privilege between a trade association's members and the association's counsel. Consistent with our precedent, we instead examine the objective evidence in the record supporting an attorney-client relationship between the association's counsel and this particular member. The record cannot support an implied relationship here. In particular:

- Gray did not ask Phillips to represent him or his clients or tell Phillips that he wanted to engage Phillips to provide legal services to him or his clients;

- Gray did not send Phillips any proposed engagement agreement or confidentiality agreement;

- Gray did not express a belief to Phillips that she was acting as an attorney for him or his clients;

- Gray did not seek, and Phillips did not provide, any agreement or assurances that the conversation was privileged and confidential;

- Phillips did not inform Gray that she had to run a conflicts check before providing information to Gray;

- Phillips testified that she only provided general information, not legal advice; and

- Phillips testified that, each day, she receives as few as 10 or as many as 75 phone calls, emails, or other communications from dealers.

Although Gray provided statements regarding his belief that the conversation was subject to attorney-client privilege and would be kept confidential, such unstated subjective beliefs do not give rise to an attorney-client relationship by implication. *See Span Enters.*, 274 S.W.3d at 858 ("[Appellant's] unstated, subjective beliefs do not give rise to an attorney-client relationship by implication."); *Vinson & Elkins*, 946 S.W.2d at 405–06 ("Because the attorney-client relationship is contractual, the determination of the existence of a contract must be, as in any other contract case, based on an objective standard, and not on what the parties subjectively thought."). Accordingly, the trial court acted within its discretion in overruling Baytown Nissan's attorney-client privilege objections. We hold that Baytown Nissan has not shown that it is entitled to mandamus relief based on a claim of attorney-client privilege.

## B. Work-Product Privilege

The work product doctrine preserves the rights of attorneys to thoroughly prepare cases for trial and to investigate both favorable and unfavorable aspects of their cases, while preventing attorneys from taking advantage of their opposing

counsel's efforts. *See In re Union Carbide Corp.*, 2003 WL 22682301, at *5 (Tex. App.—Houston [1 Dist.], Nov. 13, 2003). The Texas Rules of Civil Procedure define "work product" as:

> (1) material prepared or mental impressions developed in anticipation of litigation or for trial by or for a party or a party's representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees, or agents; or
>
> (2) a communication made in anticipation of litigation or for trial between a party and the party's representatives or among a party's representatives, including the party's attorneys, consultants, sureties, indemnitors, insurers, employees, or agents.

TEX. R. CIV. P. 192.5(a). The rule distinguishes between "core work product" and "non-core work product." "Core work product" concerns an attorney's mental processes and is not discoverable. *See* TEX. R. CIV. P. 192.5(b)(1). "Other" or "non-core" work product "is discoverable only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the material by other means." *Id*. at 192.5(b)(2).

Thus, our court has held that the work product privilege exempts an attorney's documents, reports, communications, memoranda, mental impressions, conclusions, opinions, or legal theories from discovery if generated in anticipation of litigation. *See Marshall v. Hall*, 943 S.W.2d 180, 183 (Tex. App.—Houston [1st

14

Dist.] 1997, no writ). The privilege also protects the mental impressions and strategy of the attorney. *Id*. Core work product is the work product of an attorney or an attorney's representative that contains the attorney's or the attorney's representative's mental impression, opinions, conclusions, or legal theories; it is not discoverable. *See* TEX. R. CIV. P. 192.5(b)(1). "Any other work product is discoverable only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the material by other means." TEX. R. CIV. P. 192.5(b)(2). The "anticipation of litigation" test is met when a reasonable person would have concluded from the totality of the circumstances that there was a substantial chance that litigation would ensue and the party asserting the work product privilege subjectively believed in good faith that there was a substantial chance that litigation would ensue. *See Nat'l Tank Co. v. Brotherton*, 851 S.W.2d 193, 204, 207 (Tex. 1993). Whether the Gray-Phillips Conversation was in anticipation of litigation is not in dispute.

BASG responds that the work product privilege does not protect facts of the case from discovery save under exceptional circumstances. *See Marshall v. Hall*, 943 S.W.2d at 183 (citing *Leede Oil & Gas, Inc. v. McCorkle*, 789 S.W. 2d 686,

687 (Tex. App.—Houston [1st Dist.] 1990, orig. proceeding) (interpreting TEX. R. CIV. P. 166b(3)(a)). "Where relevant and non-privileged facts remain hidden in an attorney's file and where production of those facts is essential to the preparation of one's case, discovery may properly be had." *Hickman v. Taylor*, 329 U.S. 495, 511, 67 S.Ct. 385, 394, 91 L.Ed. 451 (1947). We thus examine whether compelling either Phillips or Gray to testify about the Gray-Phillips Conversation would require disclosure of attorney work product and, if so, whether an exception to the work product privilege applies.

*Discovery from Phillips*

Baytown Nissan notes that Gray sought to investigate the claims of this case in his discussions with Phillips because (1) "TADA itself openly states that it represents the Texas automobile dealer body and works on behalf of its members" and (2) "Phillips testified that TADA's purpose is to represent the Texas automobile dealer body before the Texas Legislature, Congress, and regulatory agencies." To the extent Baytown Nissan suggests that Phillips was its representative, we reject this argument for the same reason that an attorney-client privilege does not attach. The evidentiary record does not conclusively demonstrate an agreement that Phillips was to serve as either an attorney or any

16

sort of representative acting on behalf of Baytown Nissan. Instead, the record includes, among other things, an affidavit from Phillips stating that Gray "did not ask [Phillips] if [she] would be willing to be a consulting or testifying expert in any matter and did not mention anything about [her] being or potentially being an expert." Phillips herself disavows such a relationship. The trial court thus was within its discretion in concluding that Phillips's testimony was not covered by work product privilege.

*Discovery from Gray*

We reach a different conclusion in the application of the work-product doctrine to the testimony sought from Gray. The record demonstrates that Gray is Baytown Nissan's lawyer. His conversation with Phillips was conducted as part his examination of the ROFR and the dealership sale that is the subject of the underlying lawsuit. The deposition questions posed to Gray requested the disclosure of his thoughts and mental impressions with respect to the claims at hand. His firm is Baytown Nissan's counsel of record in this lawsuit. As one of our sister courts noted in granting mandamus relief in similar circumstances:

> Every attorney of record in a case being litigated, or in a case where litigation is anticipated, obtains "factual, relevant information." Performing the function of a lawyer does not preclude a litigation attorney from observing, investigating, monitoring, and evaluating the

17

facts surrounding the matter in controversy. The evidence does not show [relator's attorney] was a fact witness divorced from the litigation. His work was reasonably related to and in furtherance of the prosecution of [relator's] case against the defendants, and also related to mitigating its damages regarding [real party in interest] and to defending against [real party in interest's] causes of action. We conclude his activities fall within the Rule 192.5 work product definition.

*In re Baptist Hosps. of S.E. Tex.*, 172 S.W.3d 136, 143 (Tex. App.—Beaumont 2005, orig. proceeding.) "Compelling an attorney of record involved in the litigation of the case to testify concerning the suit's subject matter generally implicates work product concerns" and "is inappropriate under most circumstances*." Id.* at 140, 145.

Deposition questions requesting Gray's mental impressions regarding his conversation with Phillips (such as whether Phillips's statements "were consistent with [his] experience") are core work product and not discoverable. Other questions requesting factual details of Gray's conversation with Phillips are non-core work product. With respect to those questions, BASG had the burden of demonstrating the substantial need and undue hardship requirements for discovery of non-core work product. *See* TEX. R. CIV. P. 192.5(b)(2). This is a particularly heavy burden when a discovery request seeks to compel the deposition of a party's attorney:

18

Generally, an attorney of record in litigation is an advocate, not a fact witness, in the litigation process. As with compelling production of opposing counsel's litigation file, compelling a deposition of the opposing party's attorney of record concerning the subject matter of the litigation is inappropriate under most circumstances. Calling opposing counsel of record as a witness seriously disrupts the counsel's functioning as an advocate and may create a false impression that the advocate was improperly involved in the underlying issues in the litigation.

*In re Baptist Hosps. of S.E. Tex.*, 172 S.W.3d at 145.

Our decision in *Marshall v. Hall* is instructive in this case. *See* 943 S.W.2d 180. In *Marshall*, an employee of the relator's attorney interviewed a witness to a car accident over the telephone and took notes of the interview. *Id.* at 182. In holding that the interview notes were protected by the attorney work product privilege, our court reasoned:

Here, [the attorney's employee] was acting as an agent of the relators' attorney. Her task in interviewing [the witness] was to generate information to make the strategic decision of whether to depose [the witness]. In accomplishing her task, [the attorney's employee] compiled facts from her conversation with [the witness]. She reorganized those facts according to her mental impressions of what organization would best help the relators' attorney decide whether to take [the witness'] deposition. She omitted some facts she felt were not helpful to the [relators'] case. We believe that not only her summaries but her interview notes as well are protected by the attorney work product privilege.

*Id.* at 183. Our court rejected an effort to overcome the privilege based on hardship, applying the two-part test provided in *Hickman* for exemption from

19

privilege requiring that (1) the information be "hidden in the attorney's file" and (2) the facts sought to be discovered must be "essential to the preparation of one's case." *See id.* (quoting *Hickman*, 329 U.S. at 511). As in *Marshall*, BASG has not satisfied its burden of demonstrating exemption from privilege. The information it seeks, far from being hidden, is readily available through Phillips, who already has disclosed it to third-parties, who in turn at some point disclosed it to BASG. *See id*. Given Phillips's availability, there is no indication in the record of a substantial need for Gray's testimony. *See id*.

We hold that the trial court erred in compelling Gray to testify about the Gray-Phillips conversation; mandamus relief is therefore appropriate. *See In re CSX Corp.*, 124 S.W.3d at 151.

**Conclusion**

We conditionally grant the petition for writ of mandamus, and direct the trial court to vacate its order compelling Gray's deposition.   We deny further requested relief. We are confident that the trial court will comply, and the writ will issue only if it does not.

Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.