This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO ex rel.**
**STATE ENGINEER,**

Plaintiff-Appellee,

v.

**NOS. A-1-CA-33439 and**
**A-1-CA-33534 (Consolidated)**

**UNITED STATES OF AMERICA,**

Defendant-Appellee,

v.

**NAVAJO NATION,**

Defendant-Intervenor-Appellee.

v.

**B SQUARE RANCH, LLC; BOLACK MINERALS**
**COMPANY, A/K/A BOLACK MINERALS**
**COMPANY LIMITED PARTNERSHIP; ESTATE OF**
**TOM BOLACK; A/K/A THOMAS FELIX BOLACK,**
**DECEASED; BOLACK MINERALS FOUNDATION;**
**TOMMY BOLACK REVOCABLE TRUST; ESTATE**
**OF JUANITA VELASQUEZ, DECEASED; DAVID A.**
**PIERCE; MAXINE M. PIERCE; DAVID M. DRAKE;**
**and SHAWNA DRAKE,**

Defendants-Appellants.

and

**STATE OF NEW MEXICO ex rel.**
**STATE ENGINEER,**

Plaintiff-Appellee,

v.

**UNITED STATES OF AMERICA,**

Defendant-Appellee,

v.

**NAVAJO NATION,**

Defendant-Intervenor-Appellee.

v.

**MCCARTY TRUST, STEPHEN ALBERT**
**MCCARTY, TRUSTEE; AND ESTATE OF**
**MARY MCCARTY, A/K/A MARY LOUISE**
**MCCARTY, DECEASED,**

Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF SAN JUAN COUNTY**
**Honorable James J. Wechsler**

Arianne Singer, Special Assistant Attorney General
Santa Fe, NM

Utton & Kery, P.A.

John W. Utton, Special Assistant Attorney General
Santa Fe, NM

for Appellee State of New Mexico, New Mexico Office of the State Engineer

United States Department of Justice, Appellate Section
Environmental & Natural Resources Division
John C. Cruden, Assistant Attorney General
Andrew J. Guarino
Mark R. Haag
Washington, D.C.

for Appellee United States of America

Navajo Nation Department of Justice
Stanley M. Pollack
M. Kathryn Hoover,
Window Rock, AZ

for Appellee Navajo Nation

Tully Law Firm, P.A.
Richard T. C. Tully
Farmington, NM

for Appellants B Square Ranch; Bolack Minerals Company, a/k/a Bolack Minerals Company Limited Partnership; Estate of Tom Bolack; a/k/a Thomas Felix Bolack, Deceased; Bolack Minerals Foundation; Tommy Bolack Revocable Trust; Estate of Juanita Velasquez, Deceased; David A. Pierce; Maxine M. Pierce; David M. Drake; and Shawna Drake

Law Office of Priscilla A. Shannon
Priscilla A. Shannon
Farmington, NM

for Appellants McCarty Trust et al.; Stephen Albert McCarty, Trustee; and Estate of Mary McCarty, a/k/a Mary Louise McCarty, Deceased

Public Service Company of New Mexico
Mikal M. Altomare
Albuquerque, NM

for Tucson Electric Power Company and Public Service Company of New Mexico

Ute Mountain Ute Tribe
Office of General Counsel
Leland Begay, Associate General Counsel
Peter Ortego
Lee Bergen
Towaoc, CO

Samuel L. Winder
Albuquerque, NM

for Ute Mountain Ute Tribe

Modrall, Sperling, Roehl, Harris & Sisk, P.A.
Maria O'Brien
Christina C. Sheehan
Zoë E. Lees
Albuquerque, NM

for BHP Billiton New Mexico Coal Inc. and Enterprise Field Services, LLC

Stein & Brockmann, P.A.
Jay F. Stein
James C. Brockmann
Santa Fe, NM

for Albuquerque Bernalillo County Water Utility Authority, City of Española, and City of Gallup

Keleher & McLeod, P.A.
Cassandra R. Malone
Richard B. Cole
Albuquerque, NM

4

for Cities of Aztec and Bloomfield

Taylor & McCaleb, P.A.
Elizabeth Newlin Taylor
Jolene L. McCaleb
Corrales, NM

for San Juan Water Commission

Dumas Law Office, LLC
Jenny Dumas
Albuquerque, NM

for Jicarilla Apache Nation

Gary L. Horner
Farmington , NM

Pro Se

Victor R. Marshall & Associates, P.C.
Victor R. Marshall
Albuquerque, NM

for San Juan Agricultural Water Users, Hammond Conservancy District, Bloomfield
Irrigation District, Various Ditches and Various Members Thereof

C. Brad Lane Cates
Fairacres, NM

for Amici Paul Bandy, Steve Neville, and Carl Trujillo

**MEMORANDUM OPINION**

**BLACK, Judge.**

**Factual and Procedural Background**

{1}     This opinion addresses two of four appeals from the order granting settlement motion in the San Juan River General Stream Adjudication (the Settlement). Case numbers A-1-CA-33439 and A-1-CA-33534 are hereby consolidated. The portion of the opinion addressing arguments raised by the McCarty Trust Appellants follows our discussion of the issues raised by the B Square Ranch Appellants. Following decades of litigation, the approval of the Settlement in this case resolved the largest water rights claim in New Mexico. A more exhaustive procedural history of the proceedings in the district court is detailed in this Court's opinion in *Navajo Nation v. San Juan Agricultural Water Users Ass'n*, ___-NMCA-___, ¶¶ 1-5, ___ P.3d ___ (No. A-1-CA-33535, _____, ___, 2018).

{2}     As discussed in *San Juan Agricultural Water Users Ass'n*, negotiation of the Settlement took more than a decade and involved myriad public hearings. Congress then allowed further public input and formal testimony and approved the Settlement by enacting the Omnibus Public Land Management Act of 2009, Northwestern New

6

Mexico Rural Water Projects Act (the Settlement Act), Pub. L. No. 111-11, § 10301, 123 Stat. 991 (2009). The Settlement Act made it a condition of the Settlement that a New Mexico district court review the terms of the Settlement and enter a partial final decree before December 31, 2013. *See id.* § 10701(e)(1)(A)(iii). Sitting by designation in the San Juan County District Court, Judge James Wechsler established an inter se proceeding to provide the congressionally mandated review.

{3}     Following extensive discovery, briefing, and oral arguments, Judge Wechsler applied his wide knowledge and experience in water law to the record and found the settling parties had proved a prima facie case and that the non-settling parties had failed to advance evidence to create issues of material fact. Judge Wechsler made extensive and detailed findings with respect to every required element of the case. He concluded that the Settlement was fair, adequate, reasonable, and consistent with the public interest as well as all applicable laws. He recognized the objectors' motions were in the nature of "motions for summary judgment" but, given the nature of the proceeding, did not feel it necessary to address the technical requirements of Rule 1-056 NMRA.

**I.     Appellants' Brief Raises Over Fifty Issues But This Court Will Not Consider Those for Which No Legal Authority or Evidence Are Cited**

{4}     While B Square Ranch lists fifty-three issues for review it fails to provide either argument or authority for the vast majority of them. This violates well established

7

New Mexico precedent. *See Bounds v. State ex rel. D'Antonio*, 2013-NMSC-037, ¶ 10 n.1, 306 P.3d 457; *In re Adoption of Doe*, 1984-NMSC-024, ¶ 2, 100 N.M. 764, 676 P.2d 1329. Appellant has thus waived any challenge to those determinations. *See Roselli v. Rio Communities Serv. Station, Inc.*, 1990-NMSC-018, ¶ 10, 109 N.M. 509, 787 P.2d 428; *Headley v. Morgan Mgmt. Corp.*, 2005-NMCA-045, ¶ 15, 137 N.M. 339, 110 P.3d 1076. Since Appellant has chosen to incorporate by reference and adopt the arguments of the other appeals,[1] we will address such issues as necessary in our other opinions. *Utahns for Better Transp. v. United States Dep't of Transp.*, 305 F.3d 1152, 1175 (10th Cir. 2002) (listing issues and incorporating by reference is not "adequate briefing").

**II.     Appellant Was Not Denied Substantive Due Process**

{5}     Appellant makes only a single challenge to the court's findings under the required appellate standard, arguing that the "Settlement Agreement awards substantial[ly] more (not less) water rights than what the Navajo Nation could secure at trial[.]" An appellate court reviews a district court's decision to approve a settlement decree only to determine if there was an abuse of discretion. *See, e.g.*, *Platte v. First Colony Life Ins. Co.*, 2008-NMSC-058, ¶ 7, 145 N.M. 77, 194 P.3d 108

---

[1]Appellant lists issues B, C, D, E, F, G, H, I, L, M, O, P, Q, R, S, T, U, V, X, AA, BB, EE, FF, GG, HH, II, JJ, KK, LL, MM, NN, OO, PP, QQ, RR, SS, XX, YY, ZZ, and AAA, again emphasizing the unnecessary duplicity of these four appeals.

(2008); *In re Norwest Bank of N.M., NA.*, 2003-NMCA-128, ¶ 22, 134 N.M. 516, 80 P.3d 98. In this case the underlying evidence is contrary to B Square's position and does not support the legal argument that B Square has been deprived of its water rights in violation of the constitutional right to due process.

{6}     To assert a due process claim, an appellant must establish both a deprivation of a protected liberty or property interest and that the appellant was not afforded an opportunity to be heard prior to the deprivation. *Barreras v. N.M. Corr. Dep't*, 1992-NMSC-059, ¶ 18, 114 N.M. 366, 838 P.2d 983. B Square premises its argument that it lost water rights on the assertion that the district court failed to recognize "that the Settling Party, the Navajo Nation . . . waived and relinquished its rights under the '*Winters* Rights Doctrine' as consideration for the building of Navajo Indian Irrigation Project [(NIIP)]."[2]

{7}     B Square Ranch asserts, without citation, that the Navajo Nation gave sworn testimony to federal representatives and passed tribal resolutions consenting to relinquishment of "its rights under the *Winters* Rights Doctrine for the water necessary to irrigate the NIIP." Appellant then extends this argument to assert that the Navajo Nation's actions combined with passage of the NIIP Act raise "genuine issues [of]

---

[2]The only waiver supported by the record shows that the Navajo Nation did agree to waive its 1848 water in return for the NIIP project (which the Federal government has never completed).

9

material fact concerning the waiver or relinquishment of the Navajo Nation's *Winters Rights*[.]" As the district court correctly noted, "only Congress may waive Indian property rights[,]" and "[t]here is no language in the 1962 NIIP Act that waives the Navajo Nation's rights." *See* Order granting the settlement motion (citing *Oneida Indian Nation of N.Y. State v. Cty. of Oneida, N.Y.*, 414 U.S. 661, 667 (1974)); *see also Joint Tribal Council of Passamaquoddy Tribe v. Morton*, 528 F.2d 370, 376 n.6 (1st Cir. 1975) ("The right to extinguish Indian title is an attribute of sovereignty which no state, but only the United States, can exercise[.]").

**{8}** B Square Ranch argues, again without any proof in the record, that Congress relied on these Navajo Nation oral statements to pass the NIIP Act and, thus, Congress affirmed the Navajo water waiver. Even assuming there might be a factual issue about what Navajo officials may have said, that does not create any factual issue about what Congress did because a congressional waiver of tribal rights must be clear and unambiguous. *United States v. Dion*, 476 U.S. 734, 738 (1986); *Menominee Tribe of Indians v. United States*, 391 U.S. 404, 412-13 (1968). B Square Ranch does not and cannot point to any ambiguity or factual issue regarding the language of the NIIP Act. The district court therefore properly concluded, "As a matter of law, the facts B Square Ranch has presented do not create a waiver."

10

{9} Even had the NIIP Act waived some or all of the Navajo Nation's *Winters* claims, B Square Ranch's contention that the Settlement provides the Navajo Nation more water than it could secure at trial nevertheless fails. B Square would still have to prove the alleged misallocation of water resulted in B Square being deprived of its rightful property. Section 2 of the NIIP Act, authorizes an average annual diversion of up to 508,000 acre-feet. *See* NIIP Act, 43 U.S.C. § 615jj. Appellant B Square agrees that under the Settlement the total NIIP diversions of water would only be 480,729 acre-feet. Moreover, the Navajo Nation did agree in consideration for the NIIP project to waive its 1848 water priority, a substantial benefit to Appellants.[3] The Navajo Nation further agreed to share shortages with other San Juan users in times of drought and to first use up to 12,000 acre-feet per year of stored water instead of making river priority calls for the Fruitland-Cambridge and Hogback-Cudei irrigation projects. In short, B Square has completely failed to prove its assertion that the district court decision deprives it of property to which it is legally entitled and, if anything, the record proves B Square benefitted immensely from the Settlement.

## III. B Square Lacks Any Factual Basis to Argue a Procedural Due Process Claim

---

[3]For a more detailed discussion of the history of NIIP, see Judith E. Jacobsen, *The Navajo Irrigation Project & Quantification of Navajo Winters Rights*, 32 Nat. Resources J. 825, 825-32 (1992).

11

{10}     Nor does this record support any basis for B Square's conclusion that it was deprived of a right to be heard prior to the district court's approval of the Settlement. B Square premises this argument on its claims that it was not provided sufficient time to

> examine the discovery that was provided by the Settling Parties; . . . request additional discovery from the Settling Parties; . . . adequately object, respond or answer the discovery requests of the Settling Parties; . . . [and to] take over, schedule and attempt to complete the work that was being performed by certain of the Non-Settling Parties who entered into settlement agreements just before the March 1, 2013 discovery deadline.

{11}     An examination of the record in this case demonstrates the unreasonableness of B Square's position. Discovery was available to the non-settling parties at the time the State and other settling parties made their initial disclosures on April 2, 2012. From that time forward, B Square Ranch was able to review documents, make discovery requests, and conduct depositions at any time. The district court's original scheduling order closed discovery on February 1, 2013, allowing all parties ten months for discovery. On November 6, 2012, at the request of B Square Ranch along with others, the district court extended the discovery deadline to March 1, 2013. B Square totally failed to pursue adequate discovery and relied on other non-settling parties like Conoco/Phillips and El Paso Natural Gas Company to pursue discovery.

These parties noticed several depositions and produced supplemental documents and witness lists, but settled in February 2013.

{12} On February 25 and 26, 2013, just three days before the close of the extended discovery period, counsel for B Square Ranch for the first time reviewed documents made available at the United States Bureau of Indian Affairs office in Farmington, New Mexico. On March 6, 2013, five days after the close of discovery, B Square Ranch filed another request for an additional extension of 120 days for the discovery deadline, to take depositions and perform certain additional limited discovery.

{13} On April 11, 2013, B Square Ranch requested yet another 90-day extension of the discovery period. The district court denied this motion because the request failed to cite any new circumstances that would warrant a further extension. Moreover, since Congress had established December 31, 2013, as the deadline for judicial review of the Settlement, never-ending discovery was not possible. *Cf. In re E. I. Du Pont de Nemours & Co., C-8 Pers. Injury Litig.*, 2016 WL 5884964 *7 (S.D. Ohio 2016) (suggesting that discovery must have limits in even the most complex case).

{14} In total, discovery was open for over a year. The non-settling parties collectively propounded scores of interrogatories and requests for production of documents. In response, the settling parties disclosed thousands of documents, prepared and produced numerous expert reports, and identified more than a score of

potential expert and lay witnesses. Despite the duration of discovery and the number of lay and expert witnesses identified by the settling parties, the non-settling parties deposed only one witness who was not then cited or called at the subsequent proceedings.

{15} A due process claim based on the limitation of discovery must be measured on the reasonableness of the limitation to the factual context. *Archuleta v. Santa Fe Police Dep't ex rel. City of Santa Fe*, 2005-NMSC-006, ¶ 32, 137 N.M. 161, 108 P.3d 1019. Extensive research has not found a single case sustaining a due process claim on a similar record, and B Square has not cited one. Indeed those analogous appellate cases this Court was able to find summarily rejected such arguments and felt it unnecessary to even formally publish the opinion.[4]

{16} B Square also complains the district court only allowed five days following its decision to present a final order. Again these facts fail to support a violation of due process argument.

**McCarty Argument**

---

[4]*See Flowers v. Wray*, 511 F. App'x 576, 580 (7th Cir. 2013); *Rearick v. Pa. State Univ.*, 416 F. App'x 223, 224-25 (3d Cir. 2011); *Marks v. Cook*, 347 F. App'x 915, 918 (4th Cir. 2009); *Rosetsky v. Nat'l Bd. of Med. Exam'rs*, 350 F. App'x 698, 702 (3d Cir. 2009); *see also Boliaux v. Auto. Fin. Corp.*, 459 B.R. 292, 297 (N.D. Ill. 2011).

{17} The McCarty Trust, although it too refused to agree to a joint appeal, freely admits that both it and its lawyer have "relied heavily on the expertise and research of Appellants," Gary L. Horner (Ct. App. No. A-1-CA-33437), Rick Tully (counsel for B Square Ranch, Ct. App. No. A-1-CA-33439), and Victor Marshall (counsel for San Juan Agricultural Water Users Association and various Acequias and ditches, Ct. App. No. A-1-CA-33535). The arguments of the other appellants have all been disposed of by this Court in this and the related opinions referenced by McCarty Trust, and the Trust raises only one unique issue.

{18} McCarty Trust maintains that Gary Risely, who entered his appearance on behalf of the La Plata Acequia Association, and the San Juan Development, was thereby obligated to represent the individual members of those groups. This in spite of the fact that Risely repeatedly told the district court, "I am not representing individuals" and "would never presume to represent individuals who have not come to retain me and given me a contract." Based on the above erroneous factual premise, McCarty Trust concludes that Risely acted unethically by accepting a fee under the Acequia and Community Ditch Fund Act (the Act). NMSA 1978, §§ 73-2A-1 to -3 (1988, as amended through 1994). Moreover, concludes McCarty Trust, since Risely eventually agreed to approve the Settlement on behalf of his clients, "Risely sold out

15

the best interests of his clients because he was being paid by the other side—the [S]tate [E]ngineer."

{19}    Initially it must be noted that when an individual member of an association does not have an individual contract with the association's attorney, the individual is not a client. *Bachner v. Air Line Pilots Ass'n*, 113 F.R.D. 644, 649 (D. Alaska 1987); *In re Baytown Nissan Inc.*, 451 S.W.3d 140, 146 (Tex. Ct. App. 2014). Secondly, this would almost certainly lead to a conflict of interest as the rights of the association would rarely be the rights and duties of each individual member.

{20}    Moreover McCarty Trust's argument misapprehends the purpose of the Act. The Legislature enacted that Act "to provide financial assistance to acequias and community ditch systems to develop hydrological studies, acquire technical and legal research and other information and services necessary to conserve and protect water for New Mexico's future through the adjudication of water rights." Section 73-2A-2. It authorizes funding through the "acequia and community ditch fund" upon order of the director of the New Mexico Department of Agriculture. Section 73-2A-3(A). "[A] committee consisting of the director of the New Mexico department of agriculture, the chairman of the interstate stream commission and a third person who will be elected from within the New Mexico acequia commission[,]" allocates the annual funding. Section 73-2A-3(B). While the commission must "consider the state engineer's report

16

on the eligibility and priority of applicants for funds[,]" this is only one factor among several it must weigh. *Id.* Nothing in the Act requires or implies that the acequias or community ditches have to support the State Engineer's position in litigation once funding is obtained.

**{21}**    As in the *San Juan Agricultural Water Users Ass'n* case, counsel for the Trust is cautioned against the use of intemperate attacks upon opposing counsel. This warning is especially appropriate here as the factual premise that they are based on is faulty.

**CONCLUSION**

**{22}**    For the above stated reasons, the district court's decision is affirmed.

**{23}**    **IT IS SO ORDERED.**


_____
**BRUCE D. BLACK, Judge Pro Tem**

**WE CONCUR:**


_____
**LINDA M. VANZI, Chief Judge**


_____
**J. MILES HANISEE, Judge**